[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition for a new trial under C.G.S. 52-272. Both counsel agree the petitioner has a burden of proof to establish his case by a fair preponderance of the evidence.
The principal disputed issue at the jury trial of the petitioner was the identification of the petitioner as the person responsible for the death of the victim Brian Gregory. The jury deliberated over a period of seven days and found the petitioner not guilty of murder but guilty of manslaughter in the first degree with a firearm in violation of 53a-55a. He was sentenced to 20 years in prison. The appellate court affirmed the conviction in 1990.
At the trial before the jury the state produced one identification witness, Kronen, who testified that he saw the petitioner shoot the victim. Kronen and the victim drove up to a group of people in front of a house on Pine Street and bought a "nickel bag" of marijuana from a tall black male. The victim then asked if anybody knew where he could buy some cocaine. A Puerto Rican on a bicycle reached into the car and offered to get the cocaine if the victim gave him the money but the victim refused to hand over any money until he saw the drug. A man named Wayne then "mentioned getting Omar" and left the side of the car followed shortly thereafter by the man on the bicycle who had offered to get the cocaine. Shortly thereafter two men approached the passenger side of the victim's car, one of them being a Puerto Rican male whom Kronen described as being in his early twenties, with brown hair, thin mustache and about 5'6" in height. In the courtroom Kronen estimated the petitioner's height to be about 5'10" or 5'11". This male bent down and peered into the car through the passenger side window. Another male whose face Kronen could not see was standing next to him. The Puerto Rican male was then asked by the victim whether he had the coke and the man pulled out a gun and said he had the coke "give me the money." He pointed the gun into the car but did not reach in or attempt to grab the money and after a CT Page 7970 silence of five to ten seconds he then shot the victim in the face.
Kronen immediately stepped on the gas and pulled away. Within seconds a second shot was fired which hit Gregory, the victim, in the back. Kronen identified the petitioner at a lineup in the police department on August 7, 1986, as the man who fired the first shot. He also identified one Edgardo Martinez as the man on the bicycle but he was not sure if Martinez had been the person standing next to the gunman. Kronen later identified the petitioner at the trial before the jury. Kronen's identification of the petitioner was "20 seconds at the most" that the assailant was at the passenger window. He had never seen the petitioner prior to the shooting and did not know his name. There was a street light behind Kronen's car and Kronen claimed to have gotten a clear look at the assailant's face, although the victim was between him and the assailant. He admitted that he kept looking at the gun rather than the assailant during the incident, stating that the gun was first pointed at him and then moved to point at the victim. He initially described the gun as a silver automatic with no chamber but later indicated it must have been a revolver.
The defense consisted of an alibi plus evidence that a third party committed the crime. He claimed to be at the home of friends Carmen and Richard Ortega. Cruz, Rivera and Pizarro and two children were also present at the Ortega home. He claimed he remained at Ortega's apartment all night except for a 15 minute period at about 10:30 p. m. when he went to Pine Street to pick up some VCR tapes. While in Ortega's kitchen, petitioner heard two shots coming from Pine Street. He did not leave the apartment until the next morning, which is when he first learned of the shooting. The petitioner's testimony was corroborated in its critical particulars by testimony of Carmen Ortega, Richard Ortega, Pizarro and Cruz, who asserted that the petitioner was in the Ortega apartment at the time the shots were heard.
The defense presented four eyewitnesses to the shooting: Irrizary, Sheppard, Williams, and Stokes. They testified that they, Wayne Jones and Edgardo Martinez were sitting or standing in front of 605 Pine Street on the night in question. When Kronen's car pulled up, Jones went over to the driver's window and made a drug transaction with him. When Jones walked away Martinez walked over to the passenger side, fired two shots and the car pulled away while Martinez walked back across the street. Martinez had a gun in his hand, a black revolver with a brown handle, which he later handed to Jones. These eyewitnesses confirmed that Martinez fired the shots and was the only one standing where the car had been before it took off and CT Page 7971 that the petitioner was not present at the scene of the crime. The verdict of guilty of manslaughter in the first degree with a firearm was brought in on the afternoon of July 13 and on the following day petitioner moved for a new trial based upon the discovery of the new evidence described below. This motion was denied without prejudice to bringing a petition for a new trial under 52-270.
The newly discovered evidence upon which petitioner's case based is alleged as follows:
The petitioner is prepared to offer the testimony of Allison Craddock, Charles Gannt and Wesley McClain. Craddock will testify that following the conviction he spoke to Martinez who admitted that he and not the petitioner had shot Gregory. Craddock was in jail when he spoke to Martinez. Gannt in an affidavit given to Attorney Chase claimed that Martinez admitted that he "did it" and that the murder took place after an argument between himself and the victim when the victim punched him, after which he went and got a gun and returned and shot the victim. McClain in an affidavit asserted that he saw Martinez running from the scene of the crime on the morning of August 2, 1986. Petitioner alleges that the information obtained from Craddock, Gannt and McClain was newly discovered evidence material to the issue of petitioner's guilt. He asserts that the evidence could not have been discovered and produced at the former trial by the exercise of due diligence and is not merely cumulative. He claims the verdict against him is unjust and asks for a new trial.
The court notes that only Allison Craddock testified on the petition for new trial. He was serving a sentence for one year for failure to appear on a criminal matter and had been previously convicted of two felonies in unrelated matters. The petitioner criticizes the state's case at the jury trial because it was based entirely on the testimony of one witness who only observed the petitioner for 15 to 20 seconds. This is obviously an attack upon the credibility of the state's witness.
At the same time, the petitioner, although he submitted affidavits of three individuals which the court has referred to above, could only obtain Craddock to appear to testify. In fact, McClain although he signed an affidavit in which he claimed he was in Carlos' store in the evening when he heard something like a gunshot, failed to establish the date when he heard that gunshot and was in that store. In fact he participated in a deposition taken by the petitioner's counsel in which he said "I don't know nothing." He continued to refuse to answer any questions put to him by petitioner's counsel. Petitioner seeks to draw support from the mere fact that McClain CT Page 7972 refused to answer any questions, but the court regards this as pure speculation on the part of the petitioner which could just as easily support a conclusion that McClain's affidavit was inaccurate, causing him to refuse to testify on the deposition and in court, as it is to support petitioner's attempted conclusion of "support" to Craddock's concern about his own safety. The fact of the matter is Craddock did testify but as a twice convicted felon his credibility is open to doubt. Petitioner claims that Gannt, speaking to Martinez, heard him say "I went to court, and I beat it, but I did it." Gannt, however, failed to appear in court even though he was subpoenaed. In his affidavit Gannt claimed that he had known the petitioner "for a long time" but he didn't know Martinez well, although he knew him. In his affidavit Gannt said Martinez went and got a gun. When asked by petitioner's counsel "did he say what he did with the gun" his answer was "he didn't say exactly what he did with it because after that we had a lockup and I couldn't talk to him until the next day." Only after considerable prompting by petitioner's counsel in which the latter read to Gannt paragraph 5 of his previously given affidavit was petitioner's counsel able to obtain a statement from Gannt that Martinez told him "just what you just read to me." Only after further prompting by petitioner's counsel in the deposition of Gannt, did Gannt state "he (Martinez) said he beat the case then he came out and said that `I was the one that shot the guy.'" It is interesting to note that this statement was never made by Gannt in his affidavit given to Attorney Chase. Gannt admitted that he gave his affidavit to Attorney Chase "because Omar (petitioner)" was a good friend of mine." Gannt stated on cross-examination in his deposition that he thought Attorney Chase was petitioner's lawyer at the time of his affidavit given to Chase. He admitted he knew the petitioner for a long time, "six years" and he was a real good friend of his. He further stated in his deposition that he never told anybody about Martinez's statements to him and yet Attorney Chase showed up at the jail "out of the blue" to ask him what Martinez told him. Gannt said that he never specified, in talking to Martinez that he was referring to the murder on Pine Street or the murder that the petitioner was accused of committing. He only asked him if he was "in on a murder" and Martinez said he "beat" the case but he did not know how he beat it. Gannt conceded that Martinez told him that he went to court and "beat it" but Gannt didn't know what case Martinez was referring to. Gannt also admitted that he cannot read and that he never read the statement that he gave to Attorney Chase, but he had one of his brothers or sisters, somebody like that, read it to him. Attorney Chase read his affidavit that Chase had written down to him before Gannt signed it but Gannt himself never read it because he could not read. Gannt conceded that at no time in speaking to Martinez did he refer to the murder on CT Page 7973 Pine Street or the murder that the petitioner was involved with, and as a result Martinez did not know what Gannt was talking about. All told Mr. Gannt's deposition does not lend itself to making him a convincing witness. His credibility is open to doubt.
As already indicated, of the three witnesses alleged as having evidence to support petitioner's claims, only Allison Craddock appeared in court to testify. Gannt and McClain did not appear to testify. Thus the complete petition rests solely on Craddock's in court testimony. Nothing in Craddock's testimony established what kind of relationship he had with Martinez. In fact in his affidavit Craddock did not even know Martinez's last name. He certainly was no confidante of Martinez, nor was he the type of person in whom Martinez would be inclined to speak confidentially about serious matters. Furthermore, Martinez said nothing more than that he "did it" and told Craddock not to tell anybody. The only thing that Craddock's testimony proffered was what has just been quoted. The court recalls that at the jury trial there were four witnesses who testified that the petitioner did not shoot the victim, but Martinez had a gun in his hand and fired two shots. Notwithstanding their allegedly eyewitness testimony at the jury trial, the jury was not convinced of their credibility and found the petitioner guilty on the basis of Kronen's testimony.
While these four eyewitnesses did not hear Martinez admit that he killed the victim or that he shot him, they nevertheless claim they saw him do it which under the circumstances could have been very persuasive evidence if the jury was satisfied with the credibility of these witnesses which apparently they were not. The petitioner now asks for a new trial based on the slim testimony that he claims Craddock would be able to give. The court is not convinced that Craddock's testimony was sufficiently or is sufficiently convincing or would be likely to produce a different result in the event of a new trial. In a broad sense, Craddock's testimony is cumulative to the evidence of the four eyewitnesses who testified at the jury trial except for the bare statement claimed that Martinez gave Craddock, viz. I "did it." See Asherman v. State, 202 Conn. 429.
If we accept the testimony of Craddock about his conversation with Martinez while both were in jail as a confession by Martinez, the court finds it difficult to determine that Martinez's statement to Craddock was trustworthy. See State v. DeFreitas, 179 Conn. 431, 453. Unlike the confessions that occurred in Chambers v. Mississippi, 410 U.S. 284, this statement by Martinez was not made until some two years after the murder whereas in Chambers the confessions were definitely made shortly after the murder in issue. Furthermore, CT Page 7974 the confessions in Chambers were made to close acquaintances who because of their closeness could presumably be deemed persons in whom one might reasonably confide. There was no indication in DeFreitas that the person who heard the confession was anything more than a fellow prison inmate. In addition there was no evidence to indicate that Martinez was unavailable to testify. While the petitioner contends that the state could have called Martinez as a witness in this proceeding, in so claiming the petitioner overlooks the fact that the state does not have a burden of proof on his petition for a new trial. Only the petitioner has such a burden of proof. There was no requirement that the state call Martinez as a witness. If a new trial were ordered, it is more than likely the trial court would have to rule that the alleged confession by Martinez to Craddock while both were in jail did not meet the standards of reliability required for the admissibility of such a hearsay confession under the DeFreitas decision.
For these reasons the petitioner's motion for a new trial is denied.
GEORGE A. SADEN STATE TRIAL REFEREE