STEVEN M. ASHERMAN v. STATE OF CONNECTICUT
(12763)

PETERS, C. J., DANNEHY, SANTANIELLO, CALLAHAN and MENT, Js.

Argued January 9—decision released March 3, 1987

*Maxwell Heiman,* with whom was *William J. Tracy, Jr.,* for the appellant (petitioner).

*John M. Massameno,* assistant state's attorney, with whom were *Roseann Wagner,* legal intern, and, on the brief, *Dennis A. Santore,* state's attorney, for the appellee (state).

PETERS, C. J. The dispositive issue in this case is whether the discovery of new evidence unavailable at a previous criminal trial required the trial court to grant a petition for a new trial. On August 13, 1979, the petitioner, Steven M. Asherman, was convicted by a jury of manslaughter in the first degree, in violation of General Statutes § 53a-55, for the homicide of Michael Aranow.[1] Upon appeal to this court, the conviction was upheld in *State* v. *Asherman,* 193 Conn. 695, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). The discovery of new physical evidence in the vicinity of the scene of the crime in May, 1980, prompted the petitioner to file an amended

[1] The petitioner had been indicted by a grand jury on the charge of murder in violation of General Statutes § 53a-54a (a). He was convicted by the jury on the lesser included offense of manslaughter in the first degree on the basis of evidence that he had committed the homicide under circumstances showing extreme emotional disturbance. *State* v. *Asherman,* 193 Conn. 695, 729, 478 A.2d 227 (1984).

General Statutes (Rev. to 1977) § 53a-55 (a) provides: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

two count petition for a new trial pursuant to General Statutes § 52-270 (a) when his criminal appeal proved to be unsuccessful.[2] After a hearing, the trial court denied his petition and this appeal ensued. We find no error.

As we concluded in *State* v. *Asherman,* supra, the jury in the criminal trial could reasonably have found the following facts, which are relevant to the present appeal. On July 29, 1978, the petitioner and Michael Aranow, who were students at Columbia Medical School, took a break from school and traveled to the country estate of the victim's family in New Hartford. *State* v. *Asherman,* supra, 697–98. Shortly after their arrival between 9 and 9:30 p.m., the two men walked through the woods to a lookout at the top of Jones Mountain. Id., 698. After their arrival at the lookout, "some unexplained emotion or circumstance, induced perhaps by a mind-altering drug," led the petitioner to kill the victim by stabbing him with a knife over 100 times. Id.

After attempting to hide the body, the petitioner "left the scene, covered with blood, looking for some place where he could wash the blood off his clothing." Id., 698–99. As he walked through the woods, he hid, somewhere, both the knife that he had carried to the scene in a "day pack" and the blood drenched shirt that he was wearing. Id. He then attempted to wash the blood

---

[2] General Statutes § 52-270 (a) provides: "CAUSES FOR WHICH NEW TRIALS MAY BE GRANTED. (a) The superior court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the superior court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action."

from the rest of his clothing in a stream or nearby pond. Id., 699. Once day broke, he returned to the home of the victim's uncle, Frank Jones, and told him that he and the victim had been in the woods when they encountered "two guys with a gun" who had accosted them. Id. He also told Jones that he had escaped but could not find the victim, and that he wanted to call the police and the victim's parents immediately. Id.

As a result of the hearing held on the petition for a new trial, the trial court found certain further facts. On or about May 11, 1980, some nine months after the jury had convicted the petitioner, two items were found in an open field near Steele Road, approximately two miles from the site on Jones Mountain where the victim had been fatally stabbed. These items consisted of a blue knapsack and a blue "shirt" and "tie."[3]

The trial court denied the petition for a new trial. That petition was in two counts, one relying on the materiality of the newly discovered evidence, the other on allegations of juror misconduct.

With respect to the first count, claiming newly discovered evidence, the court concluded that the petitioner had failed to establish, by a preponderance of the evidence, that the evidence in question was " 'newly discovered, material to the issues on a new trial . . . not merely cumulative and likely to produce a different result. *Lombardo* v. *State,* 172 Conn. 385, 390–91 [374 A.2d 1065] (1977).' " In the court's view, the shirt was not material evidence because it bore no resemblance to the shirt reportedly worn by the petitioner on the night of the homicide. With respect to the knap-

---

[3] The knapsack and the shirt constitute the new evidence at issue in this appeal. An empty film cannister was also found along with these items, but the petitioner offered no explanation, either at the hearing or on appeal, as to the significance of the cannister. Furthermore, we note that there is some dispute whether the so-called "shirt" would more accurately be described as a short bathrobe.

sack, the court determined that, because the petitioner had conducted a diligent, but unsuccessful, pretrial search for this item, it was indeed newly discovered evidence. Nonetheless, the court concluded that its discovery would not warrant a new trial because its introduction into evidence would probably not lead to the petitioner's acquittal if a new trial were to be held.

The second count of the petition alleged that a new trial should be ordered because of various alleged acts of juror misconduct at the petitioner's criminal trial. The court found that these allegations of juror misconduct had been previously raised and fully considered in the motion for a new trial and a motion in arrest of judgment filed by the petitioner immediately after his conviction. Both motions had been denied by the trial court, *Missal, J.,* and that judgment was affirmed by this court in *State* v. *Asherman,* supra. The trial court rejected the petitioner's argument in this case that changes in the law in and subsequent to *State* v. *Asherman,* supra, entitled him to conduct an evidentiary inquiry into the mental processes of the jurors who had convicted him in his criminal trial.

From these adverse trial court rulings on both counts of his petition, the petitioner appealed to this court. He claims that the trial court erred in: (1) finding that the petitioner, despite the introduction of newly discovered physical evidence, had not met his burden of proving that a new trial was warranted; (2) permitting the state to amend its answer after the hearing on the petition; and (3) restricting the scope of the petitioner's examination of jurors in his effort to impeach the jury's verdict.

I

The petitioner's first claim of error contends that the trial court erred in denying his petition for a new trial on the basis of the newly discovered physical evidence.

The petitioner maintains that the shirt and knapsack introduced at the hearing constitute exculpatory evidence which, if presented to a jury, would lead to his acquittal. He insists that the absence of these items at his trial allowed the state "to speculate endlessly" as to the whereabouts of these items, to his prejudice. Furthermore, the introduction of these items would, in the petitioner's view, highlight numerous flaws and inconsistencies in the state's theory of the case. We disagree.

The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial. *Kubeck* v. *Foremost Foods Co.,* 190 Conn. 667, 670, 461 A.2d 1380 (1983); *Burr* v. *Lichtenheim,* 190 Conn. 351, 355, 460 A.2d 1290 (1983); *Pass* v. *Pass,* 152 Conn. 508, 511, 208 A.2d 753 (1965). This strict standard is meant to effectuate the underlying "equitable principle that once a judgment is rendered it is to be considered final," and should not be disturbed by posttrial motions except for a compelling reason. *Steve Viglione Sheet Metal Co.* v. *Sakonchick,* 190 Conn. 707, 713, 462 A.2d 1037 (1983); see *In re Juvenile Appeal (83–DE),* 190 Conn. 310, 318, 460 A.2d 1277 (1983). In determining the potential impact of new evidence, the trial court must weigh that evidence in conjunction with the evidence presented at the original trial. *Kubeck* v. *Foremost Foods Co.,* supra, 669. It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the petitioner has established substantial grounds for a new trial, and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion. Id., 670.

In the present case, there is no dispute that in fact the shirt and the knapsack are newly discovered evidence. The state does not dispute that the petitioner made a diligent, good faith effort to discover the items prior to his trial. The parties disagree, however, about the significance of these items and what effect, if any, their production would have on the outcome of a new trial.

The petitioner explains the significance of the shirt as follows. At the criminal trial, the state accounted for the absence of his shirt by theorizing that after the attack, the petitioner was covered with blood and therefore hid his bloodstained shirt, along with the knapsack, prior to descending from the mountain.[4] He points out that the shirt presented at the new trial hearing had no trace of blood on it. This fact, according to the petitioner, is probative of his innocence and casts doubt on the state's argument that he schemed to conceal all evidence of his guilt.

The petitioner's argument, however, sidesteps the fundamental question of whether the shirt presently at issue is actually the shirt that he wore on the night of July 29, 1978. The testimony at the criminal trial established that the petitioner then told the police that he had been wearing a long-sleeved blue shirt with a collar, which buttoned up the front and at the cuff, similar to a dress shirt. The item the petitioner now relies upon was described by the trial court as appearing to be "a short bathrobe or wrapper with a cloth tie belt." Our own examination of this item leads us to agree with the finding of the trial court that it bears no similarity to the shirt reportedly worn by the petitioner at the scene of the crime. This shirt is immaterial to the case, and unquestionably would not have been admissible into evidence.

---

[4] The shirt was found in the field approximately ten and one-half feet from the knapsack.

The knapsack is a slightly more significant piece of evidence. Because it was found to contain a hair which proved, under microscopic examination, to be similar to the hair of the petitioner, the court concluded that this item would have been admissible and material in the criminal trial. Nonetheless, the court concluded that its admission would probably not have led to the petitioner's acquittal.

The petitioner argues that the knapsack is exculpatory evidence for several reasons. First, since there was no blood on the knapsack and no weapons were found therein, it undermines the state's theory that the petitioner must have concealed the bloody weapons, and perhaps the bloody shirt as well, in the knapsack before hiding it. As the state notes, however, there are other plausible explanations for the absence of blood on the knapsack. For example, the petitioner might have discarded his shirt and the weapons separately, for any number of reasons, rather than concealing them in the knapsack.[5] Second, the petitioner contends that a jury might conclude from examination of the knapsack that the weapons used in the crime, which were allegedly carried in the knapsack, were too large to fit into the knapsack.[6] After examining the knapsack, however, we are persuaded that a jury could reasonably have concluded that the knapsack could have accommodated the weapons in question. Finally, the petitioner asserts that the location where the knapsack was found, beyond the area where he was believed to have been that night, would bolster his defense that he and the victim had

---

[5] A jury that was convinced that the petitioner was irrational and acting under extreme emotional disturbance when he killed the victim certainly might have been persuaded by such an explanation.

[6] To this day, the weapons have never been found. An expert witness testified at trial, however, that the victim's fatal injuries were inflicted with two weapons, a knife and a heavy bladed instrument, such as an ax, a hatchet or a machete.

been attacked by two men, the petitioner's theory being that the assailants were responsible for taking the knapsack to the site where it was eventually found. As the state points out, it is unlikely that so nebulous a theory would have made the knapsack admissible at trial, especially when an interval of two years had elapsed between the occurrence of the crime and the discovery of the knapsack.[7] See *State* v. *Stepney,* 191 Conn. 233, 245, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984).

We therefore agree with the trial court that the petitioner has established that the knapsack is material evidence but not that its admission would probably change the outcome of the criminal case. In light of the substantial circumstantial evidence that "overwhelmingly points to the defendant's guilt of manslaughter in the first degree"; *State* v. *Asherman,* supra, 742; the trial court did not abuse its discretion in denying the petition for a new trial.

## II

The petitioner's second claim of error is that the trial court erred by permitting the state to amend its answer after the hearing on the petition for a new trial. In response to the petitioner's amended petition filed on April 4, 1985, the state filed an answer on April 9, 1985. That answer responded to the allegations of the first count, but set forth only a special defense to the second count, claiming that the rights and liabilities of the parties regarding the alleged juror misconduct had been fully adjudicated in *State* v. *Asherman,* supra. On April 29, 1985, following the hearing on the petition, the state filed a motion to amend its answer in order

---

[7] The state argues persuasively that the knapsack could have been brought to the site in any number of ways, and perhaps long after the incident in question occurred.

to insert a general denial to the second count. After a hearing on the motion, the trial court granted that motion.

The petitioner asserts that the court must take the allegations of the second count as established because the state failed to contest those allegations in its original answer. See Practice Book § 160; *Worden* v. *Francis,* 153 Conn. 578, 584, 219 A.2d 442 (1966). As the petitioner conceded at oral argument before this court, however, the trial court is vested with broad discretion to allow a party to amend his pleadings at any time before, during or after trial. Practice Book § 176; *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 564, 473 A.2d 1185 (1984); *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980). Practice Book § 176 provides in relevant part: "Except as provided in Sec. 182, a party may amend his pleadings or other parts of the record or proceedings at any time subsequent to that stated in [Sec. 175] . . . [b]y order of court . . . ."[8] In this case, there is no indication in the record that the petitioner was ever led to believe that the state was admitting the allegations of the second

---

[8] Practice Book § 182 provides: "——AMENDMENT OF AMOUNT IN DEMAND

"A party may amend his statement concerning the amount in demand by order of the court upon filing of a motion for leave to file such amendment, with a copy of the amendment appended, after service upon each party as provided by Sec. 120, and with proof of service endorsed thereon. After obtaining permission of the court, the moving party shall file the original amendment with the clerk. If the amount, legal interest or property in demand was alleged to be less than $2500 in accordance with the provisions of Sec. 131, or, prior to October 1, 1979, was alleged to be less than $7500, and the party has been given court permission to amend his demand to an amount in excess of either amount, he shall pay any entry fee prescribed by statute to the clerk when he files the amendment."

Practice Book § 175 provides: "——AMENDMENT AS OF RIGHT BY PLAINTIFF

"The plaintiff may amend any defect, mistake or informality in the writ, complaint or petition and insert new counts in the complaint, which might have been originally inserted therein, without costs, during the first thirty days after the return day."

count. In the absence of a showing of prejudice, which the trial court specifically invited the petitioner to make at the hearing held on the state's motion, we conclude that the trial court did not abuse its discretion in allowing the state to amend its answer.

## III

The petitioner's final claim of error is that the trial court improperly restricted the scope of his inquiry into alleged juror misconduct, in deprivation of his federal and state constitutional rights.[9] At the hearing on the petition for a new trial, the petitioner sought to elicit testimony from two jurors to prove that he had been prejudiced by juror misconduct. The alleged misconduct consisted of: using an unauthorized dictionary definition of "inference" during deliberations; conducting experiments with articles of clothing that were not introduced into evidence; and reaching a verdict by compromise rather than by deliberation. Relying on *McNamee v. Woodbury Congregation of Jehovah's Witnesses,* 193 Conn. 15, 475 A.2d 262 (1984), which was not available to the petitioner prior to our decision in *State v. Asherman,* supra, the petitioner argues that he is now entitled to impeach a jury's verdict by inquiring into acts of juror misconduct as well as their impact

---

[9] The petitioner seems to bring this claim under the following constitutional provisions.

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial by an impartial jury."

Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

on the jury. See also *Aillon* v. *State,* 168 Conn. 541, 363 A.2d 49 (1975). He argues further that, had he been permitted to conduct such an inquiry, he would have elicited new evidence proving that he was denied a fair trial.

This multipronged claim of juror misconduct is not a newly discovered claim of a constitutional deprivation. Following his criminal trial, the petitioner filed a motion for a new trial and a motion in arrest of judgment. At a postverdict hearing on those motions, jurors were extensively examined and cross-examined by counsel for the parties concerning their alleged acts of misconduct. In a detailed memorandum of decision, the trial court, *Missal, J.,* denied both motions, reasoning that any misconduct by the jury was harmless beyond a reasonable doubt. These rulings were upheld by this court upon the petitioner's appeal in *State* v. *Asherman,* supra. Thus, since the petitioner has had one opportunity to litigate this claim, we must first determine whether the present claim of juror misconduct is barred under the doctrine of res judicata. If so, we will not reach the merits of the claim.

It is well settled that the doctrine of res judicata, or claim preclusion, applies, in principle, to both civil and criminal proceedings. *State* v. *Aillon,* 189 Conn. 416, 424, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983). Under that doctrine, "a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. *Cromwell* v. *County of Sac,* 94 U.S. 351, 352-53, 24 L. Ed. 195 (1876); 1 Restatement (Second), Judgments §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.) § 11.3." *State* v. *Aillon,* supra, 423-24; see *In re Juvenile Appeal*

*(83–DE),* supra, 316; *Cain* v. *Moore,* 182 Conn. 470, 473–74, 438 A.2d 723 (1980), cert. denied, 454 U.S. 844, 102 S. Ct. 157, 70 L. Ed. 2d 129 (1981). In a criminal case, whether two claims are the same for purposes of res judicata requires an examination of " 'all the circumstances of the proceedings.' " *State* v. *Aillon,* supra, 425.

In the present case, the valid final judgment denying, on the merits, the petitioner's previous motion for a new trial and motion in arrest of judgment is the predicate for application of the doctrine of res judicata. *State* v. *Asherman,* supra. The question before us, therefore, is whether the present claim of juror misconduct is sufficiently similar to the previous claim raised before the trial court, *Missal, J.,* and considered fully on appeal in *State* v. *Asherman,* supra, to warrant our giving preclusive effect to the prior judgment.

In his previous claim of juror misconduct the petitioner alleged, inter alia, that the jurors conducted an experiment using objects that were not admitted as evidence, that one juror read to the others a dictionary definition of "inference," and that eleven of the jurors deliberated in the absence of the twelfth juror. The petitioner does not argue that his present allegations of juror misconduct are significantly different in substance. Instead, he maintains that the trial court, *Missal, J.,* wrongfully placed the burden of proof on the state to establish that the misconduct was harmless beyond a reasonable doubt, and as a result, wrongfully precluded him from demonstrating that he was prejudiced by the misconduct. The petitioner concededly failed to assign this trial court ruling as error on his direct appeal, but claims that the failure to do so is not fatal to his present claim. He asserts that his present claim is not barred by res judicata because *State* v. *Asherman,* supra, 737, set forth a new rule of law, requiring the appellant to prove actual prejudice result-

ing from juror misconduct. Consequently, he could not have claimed as error the trial court ruling when he had no notice, until *State* v. *Asherman*, supra, had been decided, that the burden of proof was on him to establish actual prejudice.[10]

We disagree with the petitioner's underlying premise, that this court changed the existing law in *State* v. *Asherman*, supra. As the state notes in its brief, the petitioner erroneously assumed that proof of juror misconduct, of any kind, automatically gives rise to a presumption of prejudice. We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. *State* v. *Castonguay*, 194 Conn. 416, 435, 481 A.2d 56 (1984); *Aillon* v. *State*, supra, 548. Those cases are clearly distinguishable from cases like the present, in which the trial court was in no way responsible for the juror misconduct. In the latter situation, we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct. *State* v. *Castonguay*, supra, 435–36 n.19; *State* v. *Almeda*, 189 Conn. 303, 313, 455 A.2d 1326 (1983); see *Smith* v. *Phillips*, 455 U.S. 209, 215, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). Since the petitioner knew or should have known at the time of his direct appeal that he had the burden of proving actual prejudice, he should have assigned as error in *State* v. *Asherman*, supra, the ruling by the trial court precluding him from offering evidence of prejudice. The petitioner cannot collaterally attack that ruling now simply because he missed an earlier opportunity to challenge

---

[10] At oral argument, the petitioner stated that he had made an offer of proof on the issue of prejudice before the trial court, *Missal, J.*, but was precluded from offering such evidence. In our view, the fact that he made this offer of proof indicates that the petitioner was aware, prior to our decision in *State* v. *Asherman*, 193 Conn. 695, 478 A.2d 227 (1984), that he was required to prove actual prejudice.

on direct appeal. See *Meinket* v. *Levinson,* 193 Conn. 110, 113, 474 A.2d 454 (1984); *Glemboski* v. *Glemboski,* 184 Conn. 602, 605–606, 440 A.2d 242 (1981).

We recognize that in criminal proceedings the "interest in achieving finality" underlying the doctrine of res judicata must be "balanced against the interest in assuring that no individual is deprived of his liberty in violation of his constitutional rights. *Sanders* v. *United States,* 373 U.S. 1, 8, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963); *Clark* v. *Nickeson,* 321 F. Sup. 415, 420 (D. Conn. 1971)." *State* v. *Aillon,* supra, 425. Having weighed these competing interests, however, we conclude that in this case the interest in achieving finality must prevail. Since the previously raised claim of juror misconduct and the one presently before us are virtually identical in substance, the present claim is barred by res judicata. We therefore will not address whether the trial court erred in restricting the petitioner's inquiry into alleged juror misconduct.

There is no error.

In this opinion the other justices concurred.