[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff was convicted after a jury trial and found guilty of felony murder, robbery in the first degree, and carrying a pistol without a permit.
The State claimed to have proved that the petitioner and one Sherman Sims called for a cab, intending to rob the driver. The petitioner had obtained the gun from one Roberts the night before when he and Sims were together. After ordering the cab driver to pull behind a school, Sims placed the gun to the victim's neck and fired. In the process, he shot his own left pinkie finger because he had been holding the victim with his left hand. After the shooting, the petitioner and Sims walked to Adams' apartment where they were admitted by the petitioner's father. The latter noticed that the defendant was wrapping Sims' bleeding hand.
In this action he has petitioned the court for a new trial, CT Page 11303 alleging that Sherman Sims has "come forward with the truth" In an affidavit which Sims acknowledged as his at the hearing on the petition, Sims states that the petitioner was not guilty of the murder and had exited the cab before he, Sims, shot the cab driver — accidently.
Our Supreme Court has addressed the subject of a petition for a new trial in Asherman v. State, 202 Conn. 429 (1987). At page 434, the Court noted:
 "The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and [(]4) it is likely to produce a different result in a new trial."
The Court went on to say that:
 "In determining the potential impact of new evidence, the trial court must weight that evidence in conjunction with the evidence presented at the original trial."
The state argues that the evidence here is not newly discovered in that Mr. Sims was called as a witness at the criminal trial of the petitioner and he refused to testify. In fact, he gave no reason for his refusal and was found in contempt of court. However, the court will treat this evidence as newly discovered in view of the witness' refusal to testify.
While the proffered evidence could be considered material at a new trial, it is merely cumulative of the version of events testified to by the petitioner.
The major weakness in the petitioner's case is in the requirement that the newly offered evidence be likely to produce a different result in a new trial.
As he was in his appearance before this court, Mr. Sims would CT Page 11304 be cross examined about his prior inconsistent statements and his credibility could be attacked because of his prior felony convictions. The court notes also that Mr. Sims' explanation for giving the police the statement inculpating the petitioner, that "he was scared", is not credible. This statement was 19 pages long and contained such detail that it had to have been the subject of considerable thought by Mr. Sims. Then, in his second statement, given immediately after the first, he takes the blame for the shooting in a manner of speaking, but still inculpates the petitioner. This 10 page statement is inconsistent in several respects with the evidence offered in support of the petition for a new trial. In brief, his testimony now, especially in light of the prior statements, would not in all likelihood, bring about a different result.
When the new testimony of Mr. Sims is weighed in conjunction with the evidence presented at trial one must conclude that it is extremely unlikely that the trial result would be changed
An examination of the transcript in the criminal trial of the petitioner reveals the following:
1. One Roberts testified that prior to the episode in question, the petitioner had obtained a handgun from him. This testimony was not contradicted.
2. The petitioner's own statement to the police placed him in the cab with Sims and with him after the shooting.
3. Cab company records confirm the fact that the petitioner and Sims were together both before and after the shooting.
4. On the morning after the shooting, the petitioner gave a handgun to his father and at the former's request, he threw it into the Mill River.
5. When the weapon was recovered, ballistic tests confirmed that the bullet which killed the cab driver had been fired from the gun Roberts loaned the petitioner and which had been recovered from the Mill River.
6. A jacket identified as one worn by the petitioner had blood encrusted on the left sleeve. This blood was consistent with the rare blood type of the victim. (Two per cent of the national population share this type of blood). CT Page 11305
7. When the cab was examined after the crime, the right rear door was locked. This petitioner claimed he exited the cab via that door. An expert testified that this was not a plausible explanation because of the position of the "lock bar" when the cab was discovered by the police.
8. When Roberts encountered Sims and Adams several hours after the shooting and inquired about his gun, Adams claimed he had thrown it away. When Roberts saw Sims' hand bleeding, he asked Adams whether he had shot the cab driver. The defendant pointed at Sims.
In view of the foregoing, the petition for a new trial is denied.
Anthony V. DeMayo, Judge