[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner in this case was charged with two counts of aiding and abetting murder in connection with the shooting deaths of Hury Poole and Andrew Paisley at the Athenian Diner in New Haven on September 21, 1991. On April 1, 1993 a jury found him guilty of two counts of aiding and abetting manslaughter in the first degree as lesser included offenses of murder.
Under the circumstances surrounding the events of September 21, 1991 a conviction of the petitioner in this case as an accessory was dependant upon the state proving beyond a reasonable doubt that Daryl Valentine was the shooter.
In order to prove the identity of the shooter the state produced Christopher Roach as a witness who testified that he saw Valentine shoot Poole and Paisley. In addition statements of Kristina Higgins and Regina Coleman which identified Valentine as the shooter were admitted for substantive purposes under State v. Whelan, 200 Conn. 743 (1986) since those witnesses recanted their identification at trial.
Subsequent to the conviction of the petitioner, Valentine was tried and was convicted of two counts of murder, attempted assault in the first degree and carrying a pistol without a permit. The two counts of murder pertained to the deaths of Poole and Paisley as to which the petitioner had previously been convicted of aiding and abetting manslaughter in the first degree.
Christopher Roach testified at the trial of Valentine and identified him as the shooter. However, at Valentine's trial, the defense attempted to offer the testimony of one Crystal Greene to the effect that on one occasion at the Union Station, Roach told her that he didn't see who did the shooting and on another occasion at the Page One Café, Roach said to her, "Someone has to pay the price. Someone has to go." Roach denied that he had any conversations with Greene as to Valentine's involvement in the shooting.
The court sustained the state's objection to the offer of Greene's testimony as to the above statements. On appeal, the Supreme Court reversed and held that the trial court should have allowed Greene's testimony to have been presented to the jury to impeach the testimony of Roach as to his ability to identify the shooter.
It is also important to note that Roach initially told the police that he did not see the shooter but later gave a statement identifying Valentine as the shooter. Roach explained that his initial statement was the result of his not knowing the whereabouts of Valentine and concern for his well being. CT Page 10102
Also important is the fact that Greene testified that the statements at issue which she claims were made to her by Roach were made after the petitioner's trial and conviction.
The petitioner has filed this action requesting a new trial pursuant to C.G.S. § 52-270 (a) on the ground that the testimony of Crystal Greene to the effect that Christopher Roach told her at a time after the petitioner's trial and conviction that he did not see who shot Poole and Paisley, but that someone had to pay the price, is newly discovered evidence as to the petitioner.
In order for the petitioner to be entitled to a new trial on the basis of newly discovered evidence he must establish the following:
 "(1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and, (4) it is likely to produce a different result in a new trial."
Asherman v. State, 202 Conn. 429, 434 (1987).
As to the first element, clearly the evidence in question must be considered newly discovered since it did not exist at the time of the petitioner's trial and conviction, but only came into being subsequent to that time.
The question of whether the proffered evidence is material was answered by the Supreme Court when it ruled that it was harmful error for the trial court to have excluded such evidence at Valentine's trial. In the opinion of the court the testimony of Crystal Greene offered to impeach the testimony of Roach would not be cumulative.
The last requirement is that the evidence in question is likely to produce a different result in a new trial. As the respondent points out, in determining the potential impact of new evidence, the court must weigh that evidence in conjunction with the evidence presented at the original trial. Asherman v. State, supra, 434.
The respondent characterizes the testimony of Crystal Greene at Valentine's second trial as "weak, ambiguous and blatantly biased." While it is true that Greene and Valentine had a relatively close relationship it cannot be said for that reason alone that she was not worthy of belief. Nor does the court believe that her testimony would necessarily CT Page 10103 be considered by a jury as weak and ambiguous. While the court did not have the benefit of seeing Greene testify so as to evaluate her credibility, the thrust of her testimony was that Roach told her that he did not see the shooter and that someone had to pay the price. The jury must make the ultimate decision as to the weight to give to that testimony.
The respondent also argues that the Whelan statements of Higgins and Coleman must also be considered, however, they did not testify in the Adams trial. Regardless, the Supreme Court was also presented with this argument and rejected it by stating that "Roach was the only witness to give live testimony that the defendant was the shooter." State v.Valentine, 240 Conn. 395, 404 (1997).
In the opinion of the court the outcome of this petition is to a large extent governed by the Supreme Court's holding in State v. Valentine. That court concluded that the exclusion of Greene's testimony was harmful error. The court stated that "Greene's testimony, if believed by the jury, seriously would have undermined Roach's in court testimony identifying the defendant as the shooter." State v. Valentine, supra, p. 404. Error is considered harmful if it is established that the erroneous ruling of the trial court more probably than not affected the result.State v. Moody, 214 Conn. 616, 629 (1990). Therefore, the Supreme Court has held that the testimony of Greene was of a nature that it's exclusion more likely than not would affect the outcome of the trial. That standard is not unlike the fourth element which must be established to be entitled to a new trial, i.e., that the evidence in question is likely to produce a different result in a new trial.
Of course, an interesting twist to the case is the fact that Valentine was convicted of murder after a second trial in which the jury did hear the testimony of Crystal Greene. The question then becomes what affect that fact should have, if any, on the outcome of this petition. In the opinion of the court the fact that Valentine was convicted after a second trial does not impact upon the outcome of this petition. It was the opinion of the Supreme Court in State v. Valentine that the testimony of Greene, if believed by the jury would likely affect the result of that trial.
There is no way of knowing at this point, what part Greene's testimony played in the outcome of Valentine's trial. It is of course possible that the jury did not believe her. That does not mean, however, that another jury might not accept her testimony. It is also possible that the jury inState v. Valentine did believe Greene's testimony, but found that Roach's statements to her were not true and his in court testimony was true. The fact remains that the Supreme Court has held that the jury should have CT Page 10104 heard Greene's testimony since it would likely affect the outcome of Valentine's trial if believed by that jury.
In the last analysis the Supreme Court has held that Daryl Valentine was entitled to a new trial in which the jury would hear from Crystal Greene. This court believes that it is therefore bound to follow that holding and provide that same opportunity to Tyrone Adams.
The petition for a new trial is therefore granted.
Bruce W. Thompson, Judge.