MARCIA LACROIX *v.* GLENS FALLS INSURANCE
COMPANY
(AC 28447)

Flynn, C. J., and McLachlan and West, Js.

Argued February 7—officially released April 29, 2008

*Anthony D. Sutton*, with whom, on the brief, was *Howard A. Jacobs*, for the appellant (plaintiff).

*Jane G. Beddall*, with whom, on the brief, was *Terence A. Zemetis*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Marcia LaCroix, appeals from the judgment of the trial court rendered in favor of the defendant, Glens Falls Insurance Company, after a hearing in damages. The plaintiff also challenges the trial court's denial of her motion for a new trial. On appeal, the plaintiff claims that, under the circumstances of this case, the court acted improperly in denying her motion for a new trial. We affirm the judgment of the trial court.

This is an underinsured motorists case. The plaintiff's vehicle was struck from behind in a motor vehicle accident, leaving little visible damage to her vehicle but causing physical injury to the plaintiff. The plaintiff recovered the full amount of the other motorist's insurance policy of $100,000. She then brought this action against this defendant, her insurer, seeking to recover underinsured motorists benefits on her own policy. After summary judgment was entered against the defendant on liability only, a hearing in damages was tried to the court. At the hearing in damages, the plaintiff did not call treating physicians or examining physicians to testify but, instead, introduced their written medical reports into evidence. The court awarded $108,111.20 in economic damages and an additional $50,000 in noneconomic damages, for a total of $158,111.20. The court further found: "Inasmuch as the plaintiff's counsel stipulated during trial, on the record, that the defendant is entitled to a collateral source deduction of $70,805.90, the net award is $87,305.30 (award of $158,111.20 minus collateral source credit of $70,805.90). The plaintiff's counsel also stipulated on the record that the defendant

is entitled to a further credit of the $100,000 paid to the plaintiff on behalf of the tortfeasor, David Caron, by Caron's liability insurance carrier. Since the net award of $87,305.30 is less than the $100,000 credit, this is not a case of underinsurance." The court then rendered judgment in favor of the defendant.

Thereafter, the plaintiff moved for a new trial on two grounds. The first ground alleged that the judgment was not supported by the evidence at trial. The second ground alleged that evidence was discovered after the court rendered judgment, consisting of statements from Thomas Arkins, a physician who saw the plaintiff for an independent medical examination, asserting that he possessed certain records regarding the plaintiff's prior medical condition at the time of his examination of the plaintiff. On appeal, the plaintiff has briefed only the issue of whether the court improperly denied her motion for a new trial, and we, therefore, deem all other claims abandoned.

Our standard of review of such a claim on appeal is the abuse of discretion standard. *Fitzpatrick* v. *Hall-Brooke Foundation, Inc.*, 72 Conn. App. 692, 697, 807 A.2d 480, cert. denied, 262 Conn. 914, 811 A.2d 1291 (2002). "The function of a court at a hearing for a new trial is to determine whether the evidence presented at the hearing considered with the evidence presented at the original trial warrants the granting of a new trial. That determination is within the sound discretion of the court. . . . A petition for a new trial is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. As the discretion which the court is called upon to exercise is not an absolute but a legal one, we will upon appeal set aside its action when it appears that there was a misconception on its part as to the limits of its power, that there was error in the proceedings preliminary to the exercise of its discretion, or that there was a clear abuse

in its exercise of its discretion." (Citations omitted; internal quotation marks omitted.) *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 669–70, 461 A.2d 1380 (1983).

As set forth by our Supreme Court in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), "a court is justified in granting a petition for a new trial when it is satisfied that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously despite the exercise of due diligence; (2) would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial." *Shabazz* v. *State*, 259 Conn. 811, 820–21, 792 A.2d 797 (2002); see also *Ginsburg* v. *Cadle Co.*, 61 Conn. App. 388, 392, 764 A.2d 210, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001). "To entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." *White* v. *Avery*, 81 Conn. 325, 328, 70 A. 1065 (1908).

The following additional facts are pertinent to our review of the plaintiff's claim. After the motor vehicle accident, the plaintiff sought medical treatment from several physicians. Arkins, a physician selected by the defendant, conducted an examination of the plaintiff. He found a 7.5 percent permanent disability of both the plaintiff's back and neck. The defendant's evidence at the hearing in damages revealed, however, that the plaintiff had experienced *prior injuries* to both her neck and back unrelated to this case.

Following the hearing in damages, the court rendered its decision via a memorandum in which it found that the plaintiff had suffered a prior back injury in 1997, for which she consulted an orthopedic surgeon, Robert

Geist, and, subsequently, a neurologist, Bruce Haak, whose report referenced a 1982 injury that had resulted in a permanent disability. Haak had assigned the plaintiff a 5 percent permanent partial disability of the neck in 1997. The court also found that the plaintiff had complained to another physician, Catherine Arnold, of low back pain, cracking, neck pain and migraines three months before the collision giving rise to this underinsured motorists claim.

The court further found that after the August 18, 2001 collision, which gave rise to this case, the plaintiff saw many physicians, including Arthur Seigel, a neurologist. The court found that the plaintiff had "told Dr. Seigel that she had no preexisting condition with regard to the neck, in spite of the fact the she was given a 5 percent permanent disability of the neck by Dr. Haak in 1997, and in spite of the fact she had complained of neck pain to Dr. Arnold on May 21, 2001." The court also found that the plaintiff treated with Moshe Hasbani, another neurologist, beginning in December, 2001. The plaintiff told Hasbani that "her neck pain was not present prior to the accident." Hasbani rated the plaintiff as having a 7.5 percent permanent partial disability of her neck and lumbar spine. The court found that there was no indication in Hasbani's report that he knew at the time he gave the plaintiff a 7.5 percent permanency rating of the neck that Haak had assigned her a 5 percent permanency rating of that same part of the body in 1997.

Additionally, the court found that "the plaintiff was seen by [Judith] Gorelick, a neurosurgeon, who said the plaintiff presented with a two year history of progressive neck and low back pain, saying her symptoms began following a car accident . . . . In Dr. Gorelick's report . . . there is no mention by the plaintiff of prior neck or back pain or injuries." The court also made reference to a portion of Gorelick's report in which she had stated that although the plaintiff "had a prior

isolated episode of transient back and leg pain, those symptoms had resolved years prior to the recurrence of these symptoms."

On appeal, the plaintiff takes issue with the following additional findings contained in the court's memorandum of decision: "On April 18, 2006, Dr. Thomas Arkins, with whom Dr. Gorelick is now associated in the practice of neurosurgery, examined the plaintiff at the request of the defendant. His conclusion was that the plaintiff has a 7.5 percent permanent disability of her cervical spine and 7.5 percent of her lumbar spine. He stated that she is capable of light housework at home. There is no indication in Dr. Arkins' report that he was made aware of the plaintiff's preaccident back and neck complaints of May 21, 2001, to Dr. Arnold, or of Dr. Haak's 1997 opinion that the plaintiff had a 5 percent permanent partial disability of her neck. Therefore, his conclusions, like Dr. Gorelick's, concerning the plaintiff's permanent disability caused by the August 18, 2001 accident, are called into question. Relevant and material facts were withheld from many doctors in this case, including every doctor who gave the plaintiff a permanency rating of her back and neck. The plaintiff's credibility has been seriously weakened."

The plaintiff claims on appeal that the court improperly denied the motion for a new trial on grounds outside the record and without evidence and that the issue, as to whether Arkins had the previous medical reports before making his permanency rating was not relevant until the court made, what the plaintiff calls, a sua sponte finding that Arkins did not have that pertinent information. Therefore, the plaintiff argues, she should have been granted a new trial to offer the evidence that Arkins, in fact, did have those reports. We do not agree.

It is axiomatic that a court cannot find facts without direct evidence or circumstantial evidence arising from inferences drawn from that evidence. As the trier of fact, the court can draw all reasonable and logical inferences based on the facts proven. See *State* v. *Englehart*, 158 Conn. 117, 121, 256 A.2d 231 (1969). These inferences, however, must be based on reasonable probabilities. See *Hennessey* v. *Hennessey*, 145 Conn. 211, 214–15, 140 A.2d 473 (1958). In the present case, the court reasonably could have inferred from the lack of any reference in the many medical reports to the prior neck and back injuries of the plaintiff that, in fact, the plaintiff had not advised these physicians of her prior treatment and her prior disability ratings.

In its ruling on the motion for a new trial, the court specifically found that the claimed newly discovered evidence relating to Arkins could not meet the first prong of the *Asherman* test, namely, that the evidence could not have been discovered earlier by due diligence. The plaintiff chose not to have any physician testify at the hearing in damages, and she did not offer written supplements to the medical reports that were entered into evidence, which might have explained what each physician had relied on as to the plaintiff's prior medical history and whether they had known of her past injuries and disability ratings. Although the plaintiff argued in her motion for a new trial that Arkins did have the reports of Haak and Arnold when making his assessment of the plaintiff's condition, the court rejected that argument, stating that the plaintiff had had the opportunity to put on her case and that she could have called Arkins to testify.

In ruling on the plaintiff's motion for a new trial, the court explained that the medical report that had been submitted "lacked persuasive evidence that Dr. Arkins knew about either report [from Arnold or Haak], and it lacked persuasive evidence that the plaintiff told Dr.

Arkins about the 1997 permanency rating from Dr. Haak or the May, 2001 back and neck complaints. In fact . . . Dr. Arkins' report strongly suggests the plaintiff didn't mention them to him. . . . Without . . . a full disclosure of the history, the doctor's report is open to question, a lot of question."

The court also explained in its ruling: "Dr. Arkins did specify three other doctors whose reports he examined. Yet, he didn't mention Dr. Haak and Dr. Arnold. Certainly, a reasonable interpretation . . . of the fact that he went out of his way to specify three doctors whose reports he had examined, and he didn't even mention Dr. Haak or Dr. Arnold, a fair interpretation . . . is that he wasn't aware of it."

Although the plaintiff now argues that she did not know that this information would be an issue in the damages case, we conclude that once the defendant entered into evidence the plaintiff's prior medical records, showing her earlier disability ratings for the same body parts for which she claimed injury from the collision in this case, the plaintiff should have known that this would be an issue in her case. The court found that the plaintiff had the opportunity to prove her damages but that she failed to prove her case; the "new" evidence that she sought to introduce in a new trial had been available at the time of the hearing in damages, but she failed to offer it by calling the physicians as witnesses or by offering supplements to the medical records.[1] On the basis of the record before us, we conclude that the court properly found that the plaintiff

---

[1] The court also found that the plaintiff failed to demonstrate that the outcome of a new trial likely would be different. The court reasoned that, even if it were shown that Arkins knew of the plaintiff's prior medical history, there were so many other physicians who were not aware of it that the alleged "new" evidence likely would have made no difference to the outcome of a new trial. We agree with this reasoning and conclude that the plaintiff failed to satisfy her burden of demonstrating that the proffered evidence would have been likely to produce a different result at a new hearing in damages.

had not sustained her burden to show that there existed the necessary substantial grounds to warrant a new trial. Accordingly, we further conclude that the plaintiff has not sustained her burden on appeal to show that the court abused its discretion in denying the motion for a new trial.

The judgment is affirmed.