# RALPH E. DAVIES ET AL. *v.* SCOTT JEZEK
## (AC 30107)

DiPentima, C. J., and Harper and Mihalakos, Js.

Argued April 12—officially released September 7, 2010

*Thomas P. Willcutts*, for the appellant (named plaintiff).

*Robert W. Cassot*, with whom was *Cristin E. Sheehan*, for the appellee (defendant).

*Opinion*

MIHALAKOS, J. The plaintiff Ralph E. Davies[1] appeals from the judgment of the trial court rendered after the court denied his motion to set aside the verdict in favor of the defendant, attorney Scott Jezek, following a jury trial. On appeal, the plaintiff claims that the court improperly (1) failed to set aside the verdict because it (a) permitted the defendant's counsel to make a missing witness argument and (b) improperly instructed the jury on assumption of risk, and (2) failed to grant the plaintiff a new trial. We affirm the judgment of the trial court.

The court found the following facts. The underlying legal malpractice action against the defendant arose from a May 10, 2002 real estate closing. In that transaction, the defendant represented the plaintiff and his wife, Lauren Davies, who sought to purchase property known as 3 Norwich Road in East Haddam, on which a three-story house is located. The adjacent property,

[1] Although Ralph Davies' wife, Lauren Davies, was originally a plaintiff in the underlying case, she withdrew her claims during trial and is not a party to the present appeal. We therefore refer in this opinion to Ralph Davies as the plaintiff.

5 Norwich Road, was believed to include a large building that housed a package store. Both properties were owned by William F. D'Aquila, Jr.

Prior to the defendant's involvement in the real estate transaction, the plaintiff and his wife (the Davies) negotiated the financial terms of the purchase directly with D'Aquila. On March 12, 2002, the Davies signed a purchase contract for $282,000 for 3 Norwich Road, with a closing date of April 25, 2002. A few days prior to the closing date, after the defendant had been retained by the Davies, his paralegal alerted him that there was a potential boundary issue between the adjoining properties. The defendant contacted the Davies, who at that point were driving to Connecticut from their home in Florida. During that telephone call, the defendant suggested that the Davies should postpone the closing until they could conduct a survey to establish the exact boundary. The Davies represented to the defendant that they desired to proceed without a survey because, based on conversations with Gary Amara, who intended to purchase 5 Norwich Road, they were satisfied that any property encroachment, which was estimated to be between six inches and one foot, could be dealt with after the closing. The defendant testified that during that conversation, the Davies told him that the boundary line was located on the west side of the package store and that it might be a deviation of, in the "worst case, maybe an inch."[2]

Thereafter, D'Aquila entered into a contract to sell 5 Norwich Road, the adjacent property, to Gary Amara and Arla Amara. He planned to close on the sales of both properties on the same date. Because the defendant

---

[2] A paved driveway is immediately adjacent to the western edge of the package store. According to the defendant's testimony, he understood that the paved driveway was part of 3 Norwich Road and that the western edge of the package store was the intended boundary line between the two properties.

remained concerned about a potential boundary dispute, he advised the Davies to sign a boundary dispute agreement, which they did.[3] On May 10, 2002, D'Aquila executed a warranty deed transferring 3 Norwich Road to the Davies for $282,000, and the plaintiff signed an application for homeowner's insurance to insure the home on the property. On that same date, D'Aquila also executed a warranty deed transferring to the Amaras 5 Norwich Road, which included the transfer of a lease to the package store owner, Michael A. Billings, for use of the building.[4]

The Amaras had the properties surveyed and learned that the actual boundary was on the eastern edge of the package store, placing the entire building on 3 Norwich Road. Subsequently, the plaintiff claimed that it had always been his intention to open a coffee shop in the space occupied by the package store and sought to evict Billings from the property. The defendant testified that the plaintiff had never stated that he intended to purchase the package store to open a coffee shop or for any other reason. The defendant also notified the plaintiff that, because he previously had represented Billings in the preparation of the package store lease, he could not represent the plaintiff in any claims against Billings. The defendant referred the plaintiff to other counsel.

The plaintiff obtained the legal services of two other law firms, one of which brought his summary process

[3] The Amaras had already signed the agreement prior to the Davies' receiving the document. The agreement provided in relevant part: "The Amaras shall, within 90 days of this Agreement, at their cost and expense, have the common boundary line of 5 Norwich Road, East Haddam and 3 Norwich Road, East Haddam surveyed. In the event that such survey shows any encroachments by either party onto the other's property, the parties agree to adjust their common boundary line to eliminate any such encroachment and to enter into a Boundary Line Agreement to be recorded on the East Haddam Land Records to establish the agreed common boundary."

[4] The Amaras were represented by their own counsel during the closing.

action to evict Billlings and another which brought an action to quiet title in the property dispute. Those cases eventually were settled. Consequently, the plaintiff sought to recoup those attorney's fees by bringing an action against the defendant for legal malpractice. The plaintiff claimed that the defendant (1) allowed, instructed and counseled the Davies to close on the property with full knowledge of the boundary dispute, (2) instructed and counseled the Davies to sign the boundary dispute agreement without the benefit and protection of an accurate survey, (3) failed to disclose to the Davies that he had previously represented D'Aquilla with regard to a lease, (4) failed to insist that the closing be postponed until the boundary dispute had been resolved with a survey and (5) failed to include in the boundary dispute agreement a mechanism for dispute resolution.

A jury trial on the plaintiff's legal malpractice claim concluded on December 7, 2007. The jury found that the defendant had not committed legal malpractice in his representation of the plaintiff. On December 17, 2007, the plaintiff filed a motion to set aside the verdict. The court conducted an evidentiary hearing on March 31 and April 4, 2008. On June 26, 2008, the court, *Jones, J.*, issued a memorandum of decision denying the plaintiff's motion and rendering judgment in favor of the defendant. The plaintiff, thereafter, sought an articulation as to the court's reasoning for the denial of his motion, and the court denied that motion for articulation. This appeal followed. Additional facts and procedural history will be provided as necessary.

I

A

The plaintiff first claims that the verdict should be set aside because the court improperly permitted the defendant, during his closing argument, to present a

missing witness argument as to Lauren Davies' failure to testify at trial, pursuant to General Statutes § 52-216c. We disagree.

"When a verdict should be set aside because of improper remarks of counsel . . . the remedy is a new trial. . . . Our standard of review for such a claim is whether the court abused its discretion when it denied the motion. . . . [T]he trial court is invested with a large discretion with regard to the arguments of counsel . . . . [W]hile its action is subject to review and control, we can interfere only where the discretion was clearly exceeded or abused to the manifest injury of some party. . . . In fact, the court must allow [c]ounsel . . . a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel . . . .

"The phraseology to describe whether there has been an abuse of discretion in not setting aside a verdict and granting a new trial is somewhat different as between civil and criminal cases. . . . In civil cases . . . the harmed party must show manifest injury . . . . In every case, both criminal and civil, involving improper argument, there are two questions. The first is whether the remarks were improper, and the second is whether, if the remarks were improper, a new trial is necessary." (Citations omitted; internal quotation marks omitted.) *Sturgeon* v. *Sturgeon*, 114 Conn. App. 682, 689–90, 971 A.2d 691, cert. denied, 293 Conn. 903, 975 A.2d 1278 (2009).

The plaintiff and Lauren Davies are residents of California. On November 2, 2007, the defendant filed a motion for a continuance of the trial, which had been scheduled to begin on November 6, 2007, because he had been informed that the plaintiff suffered from cancer and was unwilling or unable to travel to Connecticut

for trial. The defendant's counsel asserted that it was not until November 1, 2007, that he was made aware that the plaintiff's medical situation would prevent him from traveling to Connecticut. The plaintiff requested that he be allowed to testify via video link. Lauren Davies also requested to testify by video link so that she could stay with the plaintiff during the course of his chemotherapy treatment. The plaintiff's doctor wrote a letter stating that the plaintiff should not travel for a period of six months due to his chemotherapy treatment. The defendant argued that, because Lauren Davies was the party plaintiff most familiar with the events leading to the closing, she should be required to testify in person.

On November 2, 2007, the court, *Aurigemma, J.*, denied the defendant's motion for a continuance and ruled that Lauren Davies would be required to testify in person. According to the court, based on the plaintiff's doctor's letter, the plaintiff knew about his cancer prior to August, 2007, and could have moved for a continuance at that time. Further, while the plaintiff's health situation justified his testimony via video link, there was no such justification for allowing Lauren Davies to testify via video link. The court ruled that she would either have to testify in person or not at all. Thereafter, Lauren Davies instructed her attorney to withdraw her claims against the defendant so that she would not have to leave her husband during his cancer treatments. The court ruled, over the plaintiff's objection, that Lauren Davies was available to testify, and, therefore, the defendant could argue during closing argument to the jury regarding her absence at trial. During his closing argument, the defendant brought specific attention to the fact that Lauren Davies had extensive and unique knowledge of the transaction but did not testify.[5]

---

[5] In his closing argument to the jury, the defendant's counsel stated: "But, there's one person who is absolutely necessary for an understanding as to what this case was about. One person who could have sat in [front of] that

General Statutes § 52-216c provides: "No court in the trial of a civil action may instruct the jury that an inference unfavorable to any party's cause may be drawn from the failure of any party to call a witness at such trial. However, counsel for any party to the action shall be entitled to argue to the trier of fact during closing arguments, except where prohibited by section 52-174, that the jury should draw an adverse inference from another party's failure to call a witness who has been proven to be available to testify."

Abundant evidence was adduced to establish that Lauren Davies was available to travel to Connecticut to testify. She (1) lived with the plaintiff, (2) previously traveled to Connecticut to visit properties on behalf of the plaintiff, (3) was not barred from traveling by a medical order or condition and (4) was a plaintiff in the case until the first day of trial and would have been required to testify. Moreover, aside from argument by the plaintiff's attorney, Lauren Davies never presented evidence to the court as to why she could not travel to testify. According to the plaintiff, much of his knowledge of the transaction came from Lauren Davies. As the court noted in its memorandum of decision on the plaintiff's motion to set aside the verdict, "Lauren Davies dealt primarily with [the defendant] about matters leading up to [the transaction], and would have more relevant and material knowledge about the closing transaction . . . ." Because she was an essential witness, it was natural for the jury to expect her to testify so that it could "judge her testimony and assess her credibility in person . . . ." Rather than be forced to testify in person, Lauren Davies chose to withdraw from

jury box and told you exactly what she was thinking, could have told you exactly why she thought she was buying a package store, could have told you exactly what efforts she undertook to try to sell this house. Because, remember, [the plaintiff] said Lauren handled the transaction when they tried to sell the house. [The plaintiff] said Lauren handled the transaction when they were looking for a house. Lauren Davies did not testify."

the case, and the plaintiff chose not to call his wife as a witness. Therefore, the court properly permitted the defendant to present in closing argument that the jury could draw an adverse inference from the plaintiff's decision not to call his wife as a witness.

## B

The plaintiff also claims that the court improperly charged the jury on assumption of the risk because the defendant never requested such a charge. The defendant contends that this claim is unpreserved and, hence, unreviewable, because the plaintiff did not take exception to the charge at trial on the ground claimed on appeal. We agree with the defendant and do not reach the merits of the plaintiff's claims.

Prior to the court's charge, the plaintiff objected to the assumption of risk charge because presenting such a charge "would be like a doctor explaining that there's a risk of surgery, and then the client [who decided] to have the surgery being somehow [found] negligent." The charge was read to the jury, and the plaintiff offered no further objections on the issue. At no point did the plaintiff object to the charge on the ground that the defendant never requested such a charge in writing.

After trial, the plaintiff filed a motion for articulation, requesting that the court clarify its charge on assumption of risk "in light of the defendant's failure to submit a request to charge in compliance with Practice Book § 16-21."[6] On January 5, 2009, the court denied the plaintiff's motion for articulation. The plaintiff subsequently filed a motion for rectification. On September 8, 2009, in response to the plaintiff's motion for rectification, the court affirmed that "the defendant did not submit

___

[6] Practice Book § 16-21 provides: "Any party intending to claim the benefit of the doctrines of supervening negligence, superseding cause, intervening cause, assumption of risk, or the provisions of any specific statute shall file a written request to charge on the legal principle involved."

a written request to charge on the doctrine of assumption of risk." On appeal, the plaintiff claims that the court should not have given a charge on assumption of risk because the defendant never submitted a written request to charge.

As our state Supreme Court has stated, "[t]he time has long since passed when a party can sit silent at the close of a charge and, if the verdict proves unpalatable, thereafter for the first time raise claims of error based on obvious inadvertencies in the charge." *Donner* v. *Kearse*, 234 Conn. 660, 680, 662 A.2d 1269 (1995).

The plaintiff had ample opportunity the challenge the court's charge on the ground that the defendant failed to comply with Practice Book § 16-21. Rather, the plaintiff chose to object only to the substance of the charge. We conclude, therefore, that the plaintiff failed to preserve this claim by taking exception to the instruction before the jury had entered its verdict, which prevented the court from being able to take appropriate remedial action.[7]

## II

The plaintiff next claims that he is entitled to a new trial because new evidence was discovered after the jury's verdict that is likely to produce a new result. We disagree.

On appeal, "[o]ur standard of review of . . . a claim [that the trial court failed to grant a new trial] is the abuse of discretion standard. . . . The function of a court at a hearing for a new trial is to determine whether the evidence presented at the hearing considered with

---

[7] The plaintiff also claims that the court failed to charge the jury on offers of compromise relating to the history and outcome of the underlying dispute. We disagree and conclude, on the basis of the reasoning set forth in the court's June 26, 2008 memorandum of decision, that the plaintiff's claim is without merit.

the evidence presented at the original trial warrants the granting of a new trial. That determination is within the sound discretion of the court. . . . A petition for a new trial is addressed to the discretion of the trial court and will never be granted except upon substantial grounds. As the discretion which the court is called upon to exercise is not an absolute but a legal one, we will upon appeal set aside its action when it appears that there was a misconception on its part as to the limits of its power, that there was error in the proceedings preliminary to the exercise of its discretion, or that there was a clear abuse in its exercise of its discretion. . . .

"As set forth by our Supreme Court in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), a court is justified in granting a petition for a new trial when it is satisfied that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously despite the exercise of due diligence; (2) would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial. . . . To entitle a party to a new trial for newly-discovered evidence, it is indispensable that he should have been diligent in his efforts fully to prepare his cause for trial; and if the new evidence relied upon could have been known with reasonable diligence, a new trial will not be granted." (Citations omitted; internal quotation marks omitted.) *LaCroix* v. *Glens Falls Ins. Co.*, 107 Conn. App. 332, 334–35, 945 A.2d 489 (2008).

The plaintiff claims that his discovery of a portion of the grantor-grantee index of East Haddam ten days after trial is sufficient to impeach the defendant's testimony. The relevant portion of that index shows that the Billings' lease was recorded on October 16, 2001, on "NORWICH RD," without a numerical designation.

According to the plaintiff, that record is inconsistent with the defendant's testimony that the lease was recorded on the land records as "5 Norwich Road."[8] The defendant responded to the discrepancy by maintaining that he had testified without any intent to misstate facts and based on his memory that he had recorded the lease. On appeal, the plaintiff claims that the discrepancy shows that the defendant gave testimony that was prejudicially false and misleading, which could be used to impeach the defendant's testimony.

Although the plaintiff suggests that the discovery of new evidence warrants a new trial, the evidence in question readily was available to the plaintiff well before trial and could have been produced during trial to impeach the testimony of the defendant. We also agree with the court that, given the entirety of evidence that was offered to the jury, presentation of this additional evidence is not likely to produce a different result in the event of a new trial. Therefore, we conclude that the court did not abuse its discretion in denying the motion for a new trial on the ground that the plaintiff has failed to meet his burden of proving that the evidence could not have been discovered before trial with reasonable diligence.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] At trial, the following colloquy took place:

"[The Defendant's Counsel]: Do you know whether [the lease agreement with Billings] was recorded on the land records?

"[The Defendant]: The entire lease was recorded on the land records.

"[The Defendant's Counsel]: Did you advise the Davies of that prior to their closing?

"[The Defendant]: No, I did not.

\* \* \*

"[The Defendant's Counsel]: Why didn't you [inform the Davies of the Billings' lease]?

"[The Defendant]: Because it was on 5 Norwich Road, what I believed to be 5 Norwich Road. The lease had a description which was 5 Norwich Road."