ABDULLAH SHABAZZ *v.* STATE OF CONNECTICUT
(SC 16523)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 29, 2001—officially released March 26, 2002

*William F. Gallagher*, with whom was *David C. McCarry*, for the appellant (petitioner).

*Robert J. Scheinblum*, assistant state's attorney, with whom were *Denise B. Smoker*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BORDEN, J. The dispositive issue in this appeal[1] is whether the trial court, in deciding this petition for a new trial on the basis of newly discovered evidence, properly engaged in a credibility assessment of the proffered newly discovered evidence in order to determine whether it was likely to produce a different result in the event of a new trial. The petitioner, Abdullah Shabazz, appeals from the trial court's judgment denying his petition for a new trial following his conviction for murder.

[1] Following the trial court's grant of permission to appeal pursuant to General Statutes § 54-95 (a), the petitioner appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

The petitioner claims that the trial court improperly engaged in a credibility assessment of the newly discovered evidence offered in support of his petition.[2] We conclude, to the contrary, that the trial court's action in this respect was proper. Accordingly, we affirm the trial court's judgment.

The petitioner was convicted, after a jury trial, of one count of murder in violation of General Statutes § 53a-54a (a),[3] and one count of carrying a dangerous weapon in violation of General Statutes § 53-206 (a).[4] He there-

[2] The petitioner also claims that the trial court improperly: (1) determined that, even if the newly discovered evidence were credited, it would not likely produce a different result in the event of a new trial because it did not support the petitioner's claim of self-defense; (2) found that the evidence was contradicted by the autopsy results and other eyewitness testimony adduced at trial; and (3) concluded that the newly discovered evidence would not render the testimony of the petitioner's expert, which had been excluded at trial, admissible. Because we conclude that the trial court correctly engaged in a credibility evaluation of the newly discovered evidence at issue, and because the petitioner does not challenge the court's finding that such evidence was unworthy of belief, we need not reach these additional issues. To avoid any confusion, however, we note that the second issue articulated previously is not an indirect attack on the trial court's fundamental credibility analysis. The court already had determined that the newly discovered evidence offered in support of the petition was not credible for a catalogue of reasons, prior to making the additional finding that it was contradicted by the majority of evidence produced by the state at trial. Because this latter finding was not part of the court's initial credibility determination, we need not review it on appeal.

[3] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[4] General Statutes § 53-206 (a) provides: "Any person who carries upon one's person any BB. gun, blackjack, metal or brass knuckles, or any dirk knife, or any switch knife, or any knife having an automatic spring release

after filed a motion for a new trial, alleging that an eyewitness had come forward and had given a statement under oath regarding the events surrounding the crimes for which the petitioner had been convicted. According to the petitioner's motion, this newly discovered evidence probably would result in a different verdict if presented to a jury in the course of a new trial.

The trial court, *Licari, J.*, declined to rule on the motion, stating that the requested relief more appropriately should be pursued in an independent petition for a new trial. As a result, the petitioner filed this petition pursuant to Practice Book § 42-55,[5] formerly § 904, and General Statutes § 52-270 (a).[6] The action on the petition, however, was stayed pending resolution of the petitioner's direct appeal from his conviction to this

device by which a blade is released from the handle, having a blade of over one and one-half inches in length, or stiletto, or any knife the edged portion of the blade of which is four inches or over in length, any police baton or nightstick, or any martial arts weapon or electronic defense weapon, as defined in section 53a-3, or any other dangerous or deadly weapon or instrument, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. Whenever any person is found guilty of a violation of this section, any weapon or other instrument within the provisions of this section, found upon the body of such person, shall be forfeited to the municipality wherein such person was apprehended, notwithstanding any failure of the judgment of conviction to expressly impose such forfeiture."

Although the legislature has amended § 53-206 (a) since 1994, the time the crime was committed in this case, the changes are not relevant to this appeal. Reference herein is to the current revision of that statute.

[5] Practice Book § 42-55 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. The judicial authority may grant the petition even though an appeal is pending."

[6] General Statutes § 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. . . ."

court. We affirmed the judgment of conviction in *State v. Shabazz*, 246 Conn. 746, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).[7] Thereafter, *Hon. Anthony V. DeMayo*, judge trial referee, heard the petition now at issue and found that the eyewitness testimony adduced in support thereof was not credible, and thus not likely to produce a different result in a new trial. Accordingly, the trial court rendered judgment denying the petition. This appeal followed.

The following facts regarding the substantive crimes committed by the petitioner, as well as the theories raised in his defense at trial, were previously set forth by this court in *State v. Shabazz*, supra, 246 Conn. 748–50. "On May 3, 1994, at approximately noon, the victim, Michael Stewart, had just completed using a pay telephone located on the New Haven green, when the [petitioner] approached the bank of telephones and began to use one of them. The victim turned toward the [petitioner] and said, Get off the phone. I beeped somebody. The [petitioner] ignored the victim and began to dial. The victim then slapped the [petitioner] in the face, the [petitioner] punched the victim, and a fistfight ensued." (Internal quotation marks omitted.) Id., 748–49.

All of this was observed by an eyewitness, Monique McNeil, who testified on behalf of the state at trial. According to McNeil's testimony, the petitioner appeared to be winning the fight when the victim tempo-

---

[7] On direct appeal to this court, the petitioner claimed "that the trial court improperly: (1) precluded him from introducing evidence that the gross medical negligence of the hospital that treated the victim caused the victim's death; (2) excluded evidence of the presence of the victim's family at the trial; (3) excluded expert evidence of the victim's character for violence, based on the presence in the victim's body of drugs and alcohol; (4) excluded the [petitioner's] spontaneous utterance immediately after the incident; and (5) denied his motion to disqualify the trial judge." *State v. Shabazz*, supra, 246 Conn. 748.

rarily escaped and reached into a nearby trash can. Id., 762. At this point, the petitioner produced a switchblade and the fight quickly escalated. Id. "[H]olding the victim so that he could not [get away, the petitioner] repeatedly stabbed the victim. When the victim collapsed to the ground, the [petitioner] paused momentarily and then continued to attack the victim with the knife while the victim was on the ground. The [petitioner] then sat on top of the victim, who was not fighting back and was coughing and bleeding, and continued to stab him with the knife until a New Haven police officer arrived and disarmed the [petitioner]. The victim was taken to Yale-New Haven Hospital, where he died approximately twelve hours later.

"At trial, the [petitioner] raised three theories of defense. He [first] claimed that he had acted in self-defense. This claim was based on his [own] testimony" that, at one point during the fight, the victim reached into a trash can to retrieve what the petitioner believed to be a gun. Id., 749. "He also claimed . . . that he had no intent to kill, and that the victim was stabbed accidentally as they tussled on the ground. Finally, the [petitioner] claimed, primarily based on the expert testimony of James Merikangas, a physician certified in both neurology and psychiatry, that he was entitled to the affirmative defense of extreme emotional disturbance so as to reduce his guilt to manslaughter. The jury rejected all of these theories of defense, and found the [petitioner] guilty of murder." Id., 749–50.

In his petition for a new trial, the petitioner alleged that an eyewitness had come forward after the petitioner's conviction with evidence "relevant and material to the issue of the [petitioner's] guilt . . . and to his [claim] of self-defense." An affidavit of the witness, Lorin Frazier, was attached to the petition, in which Frazier stated that he had met the victim on the New

Haven green the day of the murder and observed the events leading up to his death.

According to his statement, Frazier and the victim frequently ran card games on the green in which they scammed unsuspecting, would be gamblers for money. Occasionally, these individuals would discover the fraud and demand their money back, whereupon Frazier and the victim would threaten to retrieve a gun hidden in a nearby trash can. There was no evidence that such a gun actually existed, and Frazier made no assertion to that effect.

Frazier further stated that he and the victim were present on the green on the day of the encounter in order to run another scam. At one point prior to the encounter with the petitioner, the two men left to purchase and sniff synthetic morphine base. The victim also imbibed a small bottle of peppermint schnapps. According to Frazier, the drugs and alcohol affected the victim's demeanor, causing him to act in a "hyped up" and aggressive manner.

Upon returning to the green, the victim paged his brother for a ride to New Britain. While the victim waited for him to call back, the petitioner began to use the pay telephone. According to Frazier, the victim insisted that the petitioner hang up; when he refused, the victim struck the petitioner in the face. Soon thereafter, Frazier saw the petitioner pull a knife out of his jacket. The victim momentarily escaped from the petitioner and ran to a trash can, shouting that he was going to get a gun. According to Frazier's statement, the victim dove so deeply into the trash can that his head and chest disappeared. The petitioner then caught up with the victim and began to inflict the fatal series of stab wounds.

The trial court held an evidentiary hearing regarding the petition for a new trial, in which four witnesses

testified on behalf of the petitioner: George Lemieux, a private investigator; Patricia King, one of the petitioner's trial attorneys; Germano Kimbro, a counselor for a substance abuse program in which Frazier participated; and Frazier. Lemieux and King testified regarding their independent attempts to identify and secure witnesses who may have been helpful to the petitioner's defense at trial. Neither of their investigations had led to Frazier. Kimbro testified that, after the trial and during his participation in a drug treatment program, Frazier confided that he had witnessed the encounter between the petitioner and the victim; Kimbro then contacted the petitioner's counsel to inform him of this. Frazier's testimony at the hearing on the petition was consistent with his prior sworn statement.

The cumulative testimony of Lemeiux, King and Kimbro was offered to show that Frazier's existence as a witness to the incident was not known to the defense at the time of trial, despite the exercise of due diligence, and that his testimony therefore constituted newly discovered evidence. The petitioner argued, moreover, that Frazier's testimony, in and of itself, substantiated his theory of self-defense and was therefore likely to produce a different result in the event of a new trial. The petitioner specifically pointed to Frazier's statement that he had heard the victim shout that he was going into the trash can for a gun as corroborating his own trial testimony to the same effect. Moreover, according to the petitioner, Frazier's statement supplies the only reasonable explanation for why the victim sacrificed his only chance at escape by stopping to reach into the trash can. The petitioner contended that Frazier's testimony, coupled with his own statements, would constitute persuasive evidence that when the petitioner stabbed the victim, he did so under a reasonable belief that the victim was about to use deadly force in return.

The petitioner also argued that Frazier's testimony would render admissible certain testimony of his expert, Merikangas, which had been excluded at the original trial. This testimony consisted largely of Merikangas' opinion, based on his review of the victim's hospital records, that that victim " 'was, in all probability, the aggressor' " in the fight. *State* v. *Shabazz*, supra, 246 Conn. 757. At trial, the state objected to the offer of this testimony. The trial court sustained the objection, reasoning that: "(1) the evidence was not the kind of opinion evidence sanctioned [by this court in *State* v. *Carter*, 228 Conn. 412, 423, 636 A.2d 821 (1994), and *State* v. *Miranda*, 176 Conn. 107, 109–14, 405 A.2d 622 (1978), two cases relied on by the petitioner in advocating for the admission of Merikangas' testimony]; (2) the evidence was cumulative because the state conceded that the victim was the initial aggressor in the fight; (3) the evidence was unduly inflammatory and prejudicial; and (4) even if otherwise admissible despite these reasons, the [petitioner] had not laid a sufficient foundation for the admissibility of the evidence." *State* v. *Shabazz*, supra, 757–58.[8]

In his brief to the trial court regarding the petition for a new trial, the petitioner claimed that Frazier's statements rendered Merikangas' proposed testimony relevant to the issue of whether the petitioner could have retreated from the encounter with complete safety. In the petitioner's opinion, Frazier's revelation that he and the victim had intimidated the "customers" of their card games by threatening to retrieve a gun from a nearby trash can explains the victim's actions on the day of the encounter. The petitioner contended that such testimony would, therefore, have set the stage

---

[8] On appeal, we concluded that "even if we were to assume without deciding that the trial court abused its discretion in excluding the evidence, its exclusion constituted harmless error." *State* v. *Shabazz*, supra, 246 Conn. 759.

for Merikangas' opinion that, because the victim was under the influence of several drugs, his aggressive nature was probably heightened, motivating him to try and intimidate the petitioner by bluffing about the gun. The petitioner argued that this testimony, coupled with Frazier's statement that he had heard the victim refer to the gun during the course of the fight, would support his assertion that his actions were justified by a reasonable belief that the victim was about to use deadly force.

After hearing all of the evidence adduced in support of the petition, the trial court denied the requested relief. The court based its decision, in pertinent part, on its express finding that Frazier was not a credible witness, given his criminal record, history of drug abuse, and inconsistent testimony.

Before analyzing the petitioner's claim on appeal, we note that, typically, we review a trial court's decision with respect to a petition for a new trial for an abuse of discretion. See *Kubeck* v. *Foremost Foods Co.*, 190 Conn. 667, 669–70, 461 A.2d 1380 (1983). This particular appeal, however, raises the issue of whether the trial court correctly applied the standard for determining whether to grant a petition for a new trial as set forth in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987), to the petition at issue. Because this issue presents a question of law, our review is plenary. See *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000).

Both the petitioner and the state agree, as do we, that the trial court's decision in this case was governed by the standard set forth in *Asherman*. Under *Asherman* v. *State*, supra, 202 Conn. 434, a court is justified in granting a petition for a new trial when it is satisfied that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously despite the exercise of due diligence; (2)

would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial.

The roots of this test can be traced back as far as 1850, when this court first stated that a petition for a new trial will not be granted if the newly discovered evidence "could have been known before the trial, by great diligence" or if the evidence is "merely cumulative . . . ." *Waller* v. *Graves*, 20 Conn. 305, 310 (1850). In *Parsons* v. *Platt*, 37 Conn. 563, 564 (1871), we added the requirements that the evidence, in fact, be newly discovered; that it be material; and that, "if a new trial were granted a different result would be produced." (Internal quotation marks omitted.) Id., 565. Finally, in *Hamlin* v. *State*, 48 Conn. 92, 93–94 (1880), we articulated the test in terms virtually identical to that which we later adopted in *Asherman*. See also *Smith* v. *State*, 141 Conn. 202, 208, 104 A.2d 761 (1954); *Taborsky* v. *State*, 142 Conn. 619, 623, 116 A.2d 433 (1955); *Turner* v. *Scanlon*, 146 Conn. 149, 163, 148 A.2d 334 (1959); *Lombardo* v. *State*, 172 Conn. 385, 391, 374 A.2d 1065 (1977); *Burr* v. *Lichtenheim*, 190 Conn. 351, 355, 460 A.2d 1290 (1983).

In addition to considering the specific elements articulated previously, we have held that a court's decision on the petition should be guided by the more general principle that a new trial will be warranted on the basis of newly discovered evidence only where "an injustice was done and whether it is probable that on a new trial a different result would be reached." (Internal quotation marks omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 425–26, 641 A.2d 1356 (1994); *Taborsky* v. *State*, supra, 142 Conn. 623. Finally, we note that it is solely within the discretion of the trial court to determine, upon examination of both the newly discovered evidence and that previously produced at trial, whether the petitioner

has established substantial grounds for a new trial.[9]
*Asherman* v. *State*, supra, 202 Conn. 434; *Kubeck* v.
*Foremost Foods Co.*, supra, 190 Conn. 669–70.

In the present case, the trial court first articulated
the specific elements of the *Asherman* test and then
meticulously applied each element to the facts and evi-
dence before it. The petitioner contends, however, that
the trial court misapplied the fourth element by improp-
erly engaging in a credibility assessment of Frazier's
testimony in order to determine the likelihood that it
would result in a different verdict in the event of a new
trial. We disagree.

Prior case law confirms that a trial court must engage
in some form of credibility analysis in order to deter-
mine, under *Asherman*, whether the newly discovered
evidence offered in support of a petition is likely to
produce a different result on retrial. See, e.g., *Lombardo*
v. *State*, supra, 172 Conn. 391; *Smith* v. *State*, supra,
141 Conn. 208; *State* v. *Weiner*, 61 Conn. App. 738, 756
n.7, 767 A.2d 1220, cert. denied, 256 Conn. 902, 772 A.2d
600 (2001) (in analyzing petition for new trial, "it [is]
necessary for the [trial] court to consider the credibility
of the witnesses to determine whether it [is] probable
that the testimony of those witnesses would result in
a different verdict"); *Johnson* v. *State*, 36 Conn. App.
59, 68–69 n.12, 647 A.2d 373, cert. denied, 231 Conn.
946, 653 A.2d 827 (1994) (credibility analysis under *Ash-
erman*'s fourth prong consistent with principle that
petition for new trial is addressed to sound discretion
of trial court); *State* v. *Curley*, 25 Conn. App. 318, 331,

---

[9] Our case law also indicates, however, that the rules governing a court's
decision on a petition for a new trial based on newly discovered evidence
"are qualified in their application to a capital case in . . . light of the princi-
ple laid down in *Anderson* v. *State*, 43 Conn. 514, 517 [1876], that . . .
where [a] human life is at stake, justice, as well as humanity, requires us
to pause and consider before we apply those rules in all their rigor." (Internal
quotation marks omitted.) *Taborsky* v. *State*, supra, 142 Conn. 623.

595 A.2d 352, cert. denied, 220 Conn. 925, 598 A.2d 366 (1991) (petition for new trial requires full hearing on merits to determine whether evidence exists that is "new and credible"); see also *Turner* v. *Scanlon*, supra, 146 Conn. 163 (newly discovered evidence not "so strong and convincing that a new trial would probably produce a different result"); *Parsons* v. *Platt*, supra, 37 Conn. 566 (certain new evidence offered in support of petition for new trial "entitled to no weight").

In *Lombardo* v. *State*, supra, 172 Conn. 386, the petitioner sought a new trial after being convicted of selling a controlled substance in violation of General Statutes §§ 19-480 (a) and 19-452, now General Statutes §§ 21a-277 and 21a-245. The newly discovered evidence presented in support of his petition consisted of the testimony of two witnesses[10] tending to show that the petitioner had not participated in the illegal sale. Id., 389. The trial court denied the petition after finding that the testimony was cumulative, that no injustice had been done, and that it did not appear that a new trial with the additional testimony would result in a different verdict. Id., 389–90.

On appeal, this court observed that "[w]hether a new trial should be granted *does not turn on whether the evidence is such that the jury could extend credibility to it. . . .* The [petitioner] *must persuade the court* that the new evidence he submits will probably, not merely possibly, result in a different verdict at a new trial . . . . It is not sufficient for him to bring in new evidence from which a jury *could* find him not guilty— it *must be evidence which persuades the judge that a jury would find him not guilty.*" (Citations omitted; emphasis altered; internal quotation marks omitted.)

[10] One of the witnesses had begun to testify in the underlying criminal trial, but ultimately had invoked his fifth amendment privilege against self-incrimination. *Lombardo* v. *State*, supra, 172 Conn. 388. The other witness had not testified previously. Id., 389.

Id., 390–91. This articulation of the petitioner's burden of proof assigns to the trial court, in the first instance, the responsibility of evaluating the credibility of the evidence in order to decide properly whether a new trial would produce a different result. In elaborating on this point, we explicitly approved of Judge Cardozo's concurring opinion in *People* v. *Shilitano*, 218 N.Y. 161, 180, 112 N.E. 733 (1916), wherein he stated that "a judge, faced with conflicting stories [on a petition for a new trial], should [not] abandon the search for truth and turn it over to a jury. . . . [Rather] it [is] the duty of the trial judge to try the facts, and determine as best he [can] where the likelihood of the truth lay. . . . He [is] not at liberty to shift upon the shoulders of another jury his own responsibility." (Internal quotation marks omitted.) *Lombardo* v. *State*, supra, 172 Conn. 391. Thus, *Lombardo* acknowledged that it is not only proper, but often necessary, for a trial court to assess the credibility of newly discovered evidence in the context of a petition for a new trial. Id.

This court's opinion in *Smith* v. *State*, supra, 141 Conn. 208, also supports the notion that some type of credibility determination is required in evaluating a petition for a new trial based on newly discovered evidence. The basic facts and procedural posture of *Smith* are similar to those in the present case. In *Smith*, the petitioner sought a new trial after unsuccessfully appealing his conviction for murder. Id., 203. The petition was predicated on the testimony of another person that he, and not the petitioner, had helped to commit the murder in question. Id., 205. The trial court denied the petition on two grounds: (1) the petitioner had failed to exercise due diligence to procure the witness' testimony at the time of trial; and (2) the witness' testimony tending to exonerate the petitioner was "unworthy of credit, and . . . there was no reasonable ground for

believing that on a new trial . . . a jury would bring in a different or more favorable verdict." Id., 207.

On appeal, this court determined that the trial court was not warranted in concluding that the evidence would have been discovered upon the exercise of due diligence because, although the witness had been available at the time of trial, there was no indication that he would have testified in an exculpatory manner. Id. More important for purposes of the present appeal, however, was our discussion of whether the trial court had abused its discretion in determining that the witness' testimony would not be likely to change the result on a new trial. We acknowledged that the resolution of that issue "turn[ed] upon the correctness of the trial court's . . . conclusion, that [the witness'] . . . story [was] utterly unworthy of credence. [For, if that] conclusion [was] correct, it follow[ed] that . . . since it should be presumed that no jury will believe an incredible story . . . the trial court [was] warranted in concluding that a new trial would not produce a different verdict." Id., 208. After considering the witness' criminal background, the several inconsistencies inherent in his testimony, and the fact that his testimony was contradicted both by other witnesses and his own conduct, we determined that "the trial court was fully justified in concluding that no credence could be given to [the witness'] story in so far as it purported to exculpate [the petitioner]. It [therefore] follow[ed] that the court's further conclusions that it did not appear that an injustice had been done on the former trial and that [the witness'] evidence would not probably produce a different result on another trial were also correct." Id., 214. Accordingly, we affirmed the judgment of the trial court. Id.

Although, as these cases demonstrate, we previously have established that a credibility determination is a necessary part of a trial court's analysis under the fourth

prong of *Asherman,* we never have defined the proper parameters of such a determination. In this regard, we note that the extent to which a trial court properly assesses the credibility of the newly discovered evidence is informed, in large part, by two well-defined and, often, competing interests. First, the state has a general interest in preserving final judgments of conviction that have been fairly obtained and in ensuring that appropriate deference is "given to the original trial as the forum for deciding the question of guilt or innocence within the limits of human fallibility . . . ." (Internal quotation marks omitted.) *Miller* v. *Commissioner of Correction,* 242 Conn. 745, 793, 700 A.2d 1108 (1997). This interest is heightened, moreover, when the state is faced with the possibility of having to relitigate the question of the petitioner's guilt or innocence in a second trial, "when its evidence . . . may be less reliable and persuasive than it was" originally. Id., 792. Second, the petitioner has an interest, shared by the state and the judiciary, in ensuring that a wrongful conviction does not stand. Id. Indeed, even in situations in which the ultimate question is not one of total guilt or innocence, the petitioner has an interest in ensuring that he is not wrongfully convicted of a more serious crime than is justified by the facts of the case.

Our formulation of the trial judge's role in passing on the credibility of newly discovered evidence must strike the appropriate balance between these two interests. If, on the one hand, we were to limit the trial court solely to a determination of whether the newly discovered evidence would be *admissible* in a new trial and whether it *might* result in a different verdict, the trial court would be stripped of its legitimate fact-finding function on the petition and be relegated to the role of gatekeeper of the evidence. Such a result would render judgments of conviction unduly susceptible to collateral attacks, thereby giving insufficient weight to

the state's legitimate interest in finality. Alternatively, were we to hold that the trial court always acts as the final and sole arbiter of credibility in evaluating the evidence alleged to justify a new trial, we would be impeding the petitioner's legitimate interest in establishing that a wrongful conviction does not stand. For example, there may be cases in which the trial court is justified in determining that the newly discovered evidence[11] is sufficiently credible and of such a nature that, in order to avoid an injustice, a second jury, rather than the trial court itself, should make the ultimate assessment of its credibility.

We therefore conclude that, in order to give due weight and consideration to these important interests, and in order to provide sufficient flexibility to accommodate the wide variety of types of newly discovered evidence that may be offered in support of a petition for a new trial, trial courts should utilize the following approach when applying the fourth element of the *Asherman* test. The trial court must always consider the newly discovered evidence in the context of the evidence presented in the original trial. In so doing, it must determine, first, that the evidence passes a minimum credibility threshold. That is, if, in the trial court's opinion, the newly discovered evidence simply is not credible, it may legitimately determine that, even if presented to a new jury in a second trial, it probably would not yield a different result and may deny the petition on that basis. See *Smith* v. *State*, supra, 141 Conn. 208. If, however, the trial court determines that the evidence is sufficiently credible so that, if a second jury were to consider it together with all of the original trial evi-

---

[11] We note that such evidence may consist, for example, of the testimony of a newly discovered eyewitness, as in the present case; of newly discovered impeachment evidence; of newly discovered scientific evidence; of newly discovered expert testimony; or of recantation of the testimony of a prior witness, to name several types of such evidence.

dence, it probably would yield a different result or otherwise avoid an injustice, the fourth element of the *Asherman* test would be satisfied.

Applying this standard to the present case, we conclude that the trial court did not overstep its bounds in assessing Frazier's credibility. The court fully articulated its reasons for finding that he lacked credibility, and the petitioner does not challenge the substance of that assessment.

Nevertheless, the petitioner contends that the trial court may make such credibility determinations only when the newly discovered evidence consists of false testimony. In support of this theory, the petitioner asserts that there are, in our jurisprudence, two different standards for deciding petitions for new trials based on newly discovered evidence, one, which applies to evidence consisting of false trial testimony, such as a recantation or admission of perjury, pursuant to our decision in *Pradlik* v. *State*, 131 Conn. 682, 41 A.2d 906 (1945), and a second as established in *Asherman* v. *State*, supra, 202 Conn. 434, which applies to all other forms of newly discovered evidence. Under the *Pradlik* formulation, a new trial may be granted where "(a) [t]he court is reasonably well satisfied that the testimony given by a material witness is false . . . (b) . . . without it the jury *might* have reached a different conclusion . . . [and] (c) . . . the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." (Emphasis in original; internal quotation marks omitted.) *State* v. *Pradlik*, supra, 687. According to the petitioner, under *Pradlik*, a trial court may *only* evaluate the credibility of newly discovered evidence when the petition for a new trial raises the issue of whether the testimony given at trial was false. The petitioner contends, therefore, that *Asherman* rather than *Pradlik* governed the decision in the present

case, and, consequently, the trial court should not have assessed Frazier's credibility. We disagree.

First, the cases that we have discussed previously that establish that a trial court may assess the credibility of newly discovered evidence in applying the fourth prong of the *Asherman* test contradict that notion that a credibility determination is exclusive to *Pradlik*. Second, the petitioner's reliance on *Pradlik* is misplaced because the test set forth in that case was dictum. In our view, *Pradlik* cannot be read as establishing a separate standard for reviewing petitions based on false trial testimony, because such testimony was not at issue in that case. Although the petitioner in *Pradlik* had characterized the newly discovered evidence as a recantation; id., 683; we observed that, in fact, the evidence simply consisted of inconsistent statements that possibly could be used for impeachment purposes in the event of a new trial. Id., 685–87. Moreover, the majority of our case law both prior and subsequent to *Pradlik* has not differentiated among types of newly discovered evidence when reviewing a trial court's decision on a petition for a new trial.[12] Finally, because the interests

[12] In fact, our research revealed that, to date, we have decided only one case involving a petition for a new trial based on recantation evidence, namely, *Smith* v. *State*, 139 Conn. 249, 93 A.2d 296 (1952). Following his conviction for murder, the defendant in *Smith* sought a new trial on the ground that an eyewitness who had testified for the state at trial had come forward and declared, under oath in a deposition, that her trial testimony had been false. Id., 251. The trial court had denied the petition, reasoning that "the plaintiff failed to prove (1) that the [witness'] testimony on the trial was false, (2) that without it the jury might have reached a different conclusion, or (3) that the element of surprise, under the circumstances, entitled him to a new trial." Id. The petitioner appealed from the judgment of the trial court to this court. Although we affirmed the judgment, we did so, not by reference to *Pradlik* or the test enunciated therein, but rather by reference to the more general principle that "if upon reading the testimony [adduced at trial] . . . in connection with the new testimony produced, no injustice is apparent and the newly discovered evidence is insufficient to render a different result upon a new trial probable, a new trial should not be granted." (Citation omitted.) Id., 253; *Gannon* v. *State*, 75 Conn. 576, 583, 54 A. 199 (1903). In reaching our decision, we also noted that "[a] new

implicated in a petition for a new trial remain the same irrespective of the nature of the newly discovered evidence at issue, we can conceive of no principled basis for maintaining two different tests. Thus, to the extent that *Pradlik* can be read as inconsistent with *Asherman*, we reject such a distinction.[13]

The petitioner next urges us to adopt the reformulation of *Asherman*'s fourth prong, which was cited in *Reilly* v. *State*, 32 Conn. Sup. 349, 360, 355 A.2d 324 (1976), and Justice O'Sullivan's dissenting opinion in *Smith* v. *State*, supra, 141 Conn. 216, whereby the trial court determines only whether there is a reasonable certainty that the newly discovered evidence will be admitted at a new trial and whether there is also a reasonable probability that the jury will accept it. We decline this invitation, however, because neither *Reilly* nor the dissenting opinion in *Smith* is binding upon this court, and because we are not persuaded by the rationale of those opinions.[14] Furthermore, in our view,

trial will not ordinarily be granted because of the discovery of additional impeaching or discrediting testimony"; *Smith* v. *State*, supra, 251; especially where such testimony consists of something so inherently unreliable and untrustworthy as a recantation. Id., 252–53. Thus, even in the sole instance in which we have identified the nature of the newly discovered evidence at issue as falling within the category of "false trial testimony," we have not expressly endorsed the test set forth in *Pradlik*.

[13] We note that, in reviewing a trial court's action with respect to a petition for a new trial, the Appellate Court has, on occasion, differentiated among the type of newly discovered evidence involved and applied both the *Asherman* and *Pradlik* tests accordingly. See, e.g., *Morant* v. *State*, 68 Conn. App. 137, 802 A.2d 93 (2002); *Channer* v. *State*, 54 Conn. App. 620, 738 A.2d 202, cert. denied, 251 Conn. 910, 739 A.2d 1247 (1999); *Johnson* v. *State*, 36 Conn. App. 59, 647 A.2d 373 (1994). To the extent that those cases conflict with the rule and rationale set forth in this opinion, we reject them.

[14] The trial court in *Reilly* enunciated this test while rejecting the notion that it is proper for a trial judge to pass on the credibility of newly discovered evidence. "[The witness'] credibility . . . is not for this court to determine. Concerning the issue of credibility, this court must decide only whether there is a 'reasonable certainty that the evidence will be admitted at the new trial [and] also a reasonable probability that the jury will accept it.' *Smith* v. *State*, [supra, 141 Conn. 216 (*O'Sullivan, J.*, dissenting)]. It is up to the jury at the new trial to weigh [the witness'] credibility." *Reilly* v.

the standard advocated by the petitioner would set the bar too low for granting a new trial, and would not properly accommodate the competing interests that are implicated by a petition for a new trial. The standard that we adopt today appropriately balances all of the competing interests.

The judgment is affirmed.

In this opinion the other justices concurred.

*State,* supra, 32 Conn. Sup. 360. Because *Reilly* and the dissent in *Smith* fail to recognize that a credibility determination is appropriate under *Asherman* and they relegate the trial court to the role of evidentiary gatekeeper, we decline to adopt their articulation of *Asherman*'s fourth prong.