# MARK DANIELS *v.* STATE OF CONNECTICUT
## (AC 24652)

Lavery, C. J., and Schaller and DiPentima, Js.

Argued January 20—officially released April 19, 2005

*James B. Streeto*, assistant public defender, for the appellant (petitioner).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

particular grievant only for the time period in which she involuntarily drove the run.

attorney, and *Thomas R. Garcia*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Mark Daniels, appeals from the judgment of the trial court rendered following the denial of his request for certification to appeal from the denial of his petition for a new trial. On appeal, the petitioner claims that the court improperly denied (1) his request for certification to appeal and (2) his petition for a new trial, which was based on allegedly newly discovered evidence. We dismiss the appeal.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. In November, 2001, the petitioner was convicted of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and assault in the second degree in violation of General Statutes § 53a-60 (a) (2). The petitioner filed a motion for a new trial pursuant to Practice Book § 42-53, which was denied by the court on April 10, 2002.[1] We affirmed the judgment of conviction on direct appeal. See *State* v. *Daniels*, 83 Conn. App. 210, 848 A.2d 1235, cert. denied, 270 Conn. 913, 853 A.2d 528 (2004).

In that case, we set forth the following relevant facts: "The victim, Ronald Pusey, lived in an apartment located on Albany Avenue in Hartford. On December 9, 2000, he spent time shopping and drinking with a former companion, Tiandra Johnson. The victim gave Johnson keys to his apartment so that she could use the bathroom while he went to the grocery store. When he returned to his building, he encountered Johnson talking with his stepdaughter and the building superin-

---

[1] The court denied the *motion* for a new trial because it concluded that claims based on the discovery of new evidence could only be made in a *petition* for a new trial.

tendent. Johnson and the victim then went into the apartment after which Johnson again borrowed the apartment key and some money from the victim and left to go to the grocery store. When Johnson returned to the apartment, she went into the room of a female boarder named Daphne, who was not at home, but who normally kept her door locked. Johnson then went into the bathroom. While the victim was in his kitchen, Johnson entered the kitchen accompanied by a tall man with a black cloth that concealed his face. He held a gun over Johnson's shoulder and demanded money from the victim. Johnson did not come to the victim's aid, but left the apartment after the victim requested that she get his superintendent for help. The victim lunged at the masked man, and the two men struggled and fell to the floor where the victim tore the [cloth] off the intruder's face. The victim recognized the unmasked man as the [petitioner]. The [petitioner] struck the victim multiple times with the butt of the gun, including a strike across his face. During the struggle, the gun discharged. The victim lost consciousness momentarily. When he awoke, he noticed that he was alone in the apartment and that his wallet, which contained approximately $600, was gone. [Thinking] that both telephone lines were dead, he ran to a nearby grocery store and asked a person there to call the police. He [then] returned to his apartment where he found Johnson talking on the telephone.

"When the police came to the victim's apartment, he accused Johnson of assisting in the robbery by 'setting him up' and named the [petitioner] as his assailant. He was taken to a hospital by ambulance where he suffered a seizure and again lost consciousness, but not before he told an emergency medical technician that he had been assaulted by either his niece's boyfriend or his stepdaughter's boyfriend. After being hospitalized, the victim was shown an array of photographs by the police,

and he identified the photograph of the [petitioner] as the person who had assaulted him. The victim also told the police that they should arrest Johnson, whereupon he was told that the police did not have sufficient evidence to do so."[2] Id., 212–14.

On September 19, 2002, the petitioner initiated the present action by filing a petition for a new trial pursuant to General Statutes § 52-270 and Practice Book § 42-55. The petitioner alleged that newly discovered evidence would likely result in a different verdict in a new trial. Specifically, the petitioner alleged that the victim told the petitioner's former wife, Sharon Williams, that he did not know who had robbed and assaulted him. The court conducted an evidentiary hearing on April 29, 2003, at which Williams testified.[3] The court denied the petition for a new trial in a memorandum of decision dated September 4, 2003. On September 15, 2003, the petitioner filed a petition for certification to appeal pursuant to General Statutes § 54-95 (a). The court denied the petition for certification. On September 25, 2003, the petitioner filed this appeal. Additional facts will be set forth as necessary.

The petitioner first claims that the court improperly denied certification to appeal from the denial of his petition for a new trial.[4] As a preliminary matter, we

---

[2] Johnson did not testify at either the trial or the hearing on the petition for a new trial.

[3] Williams also had testified at the hearing on the petitioner's motion for a new trial.

[4] The one sentence petition requested the court to certify "that a question is involved in [the] court's decision of September 5, 2003, which ought to be reviewed . . . ." That date was a reference to the court's denial of the petition for a new trial. The court, on September 16, 2003, initially denied the petition for certification to appeal due to its "lack of specificity." Considering that the petition did not *identify* a question involved in the court's previous decision or *explain* why that question ought to be reviewed by an appellate court, the court's denial of the petition on the ground that it lacked specificity was understandable. When deciding whether to grant a petition for a new trial, a court should not have to guess about what the petitioner considers to be an appealable question. Despite its initial denial, the court

identify the standard of review. It is well established that we apply the abuse of discretion standard when reviewing a court's decision to deny a request for certification to appeal from a denial of a petition for a new trial. *Joyce* v. *State's Attorney*, 84 Conn. App. 195, 197–98, 852 A.2d 841, cert. denied, 271 Conn. 923, 859 A.2d 578 (2004). In determining whether a court abused its discretion in this context, we apply the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). *Joyce* v. *State's Attorney*, supra, 197–98. According to the *Lozada* framework, a petitioner can establish a clear abuse of discretion by demonstrating one of the following criteria: (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further. *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998). "[W]hen a petitioner presents an issue on appeal that satisfies any one of the *Lozada* criteria, that petitioner ought to have that issue considered on appeal." *State* v. *Turner*, 267 Conn. 414, 431, 838 A.2d 947, cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004). The denial of a petition for certification made pursuant to § 54-95 is not a bar to this court's jurisdiction, but is a threshold issue on appeal. See *Seebeck* v. *State*, supra, 517.

The petitioner claims that the denial of his request for certification to appeal constitutes an abuse of discretion because he has presented an issue that warrants appellate consideration. The issue concerns whether the

subsequently provided an additional ground for its denial in its memorandum of decision. The court stated that the "nature of a petition for a new trial is such that there is considerable discretion in the trial judge . . . to determine whether the newly discovered evidence offered in support of a petition is likely to produce a different result on retrial." The court concluded that its discretion "is sufficiently broad for [the] court to reasonably and respectfully opine that there is not a question presented which ought to be reviewed by the Appellate Court."

court improperly denied the petition for a new trial in light of the allegedly newly discovered evidence. Specifically, the petitioner claims that the court improperly determined that the allegedly newly discovered evidence was not likely to produce a different result in a new trial.

At the outset, we set forth the legal principles that govern our resolution of this claim. Pursuant to § 52-270, a convicted criminal defendant may petition the Superior Court for a new trial on the basis of newly discovered evidence. See also Practice Book § 42-55. "The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial. . . . This strict standard is meant to effectuate the underlying equitable principle that once a judgment is rendered it is to be considered final, and should not be disturbed by post-trial [proceedings] except for a compelling reason. . . . In determining the potential impact of new evidence, the trial court must weigh that evidence in conjunction with the evidence presented at the original trial. . . . It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the petitioner has established substantial grounds for a new trial, and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987); see also *Joyce* v. *State's Attorney*, supra, 84 Conn. App. 199; *Morant* v. *State*, 68 Conn. App. 137, 144, 802 A.2d 93, cert. denied, 260 Conn. 914, 796 A.2d

558, overruled in part on other grounds, *Shabazz* v. *State*, 259 Conn. 811, 830 n.13, 792 A.2d 797 (2002).

Before determining whether newly discovered evidence offered in support of a petition for a new trial is likely to produce a different result on retrial, a trial court must first determine whether the evidence passes a minimum credibility threshold. *Shabazz* v. *State*, 259 Conn. 811, 822, 792 A.2d 797 (2002). "[W]hether a new trial should be granted *does not turn on whether the evidence is such that the jury could extend credibility to it. . . .* The [petitioner] *must persuade the court* that the new evidence he submits will probably, not merely possibly, result in a different verdict at a new trial . . . . It is not sufficient for him to bring in new evidence from which a jury *could* find him not guilty—*it must be evidence which persuades the judge that a jury would find him not guilty.*" (Emphasis in original; internal quotation marks omitted.) Id., 823. The court's role in analyzing the credibility of newly discovered evidence must strike an appropriate balance between two competing interests: "First, the state has a general interest in preserving final judgments of conviction that have been fairly obtained and in ensuring that appropriate deference is given to the original trial as the forum for deciding the question of guilt or innocence within the limits of human fallibility . . . . Second, the petitioner has an interest, shared by the state and the judiciary, in ensuring that a wrongful conviction does not stand." (Citations omitted; internal quotation marks omitted.) Id., 826.

The following additional facts and procedural history are relevant to our resolution of the petitioner's claim. At trial, the victim testified that the perpetrator wore a black piece of cloth over his face that was similar to what "somebody getting married" would wear. The victim further testified that during the struggle with the perpetrator, he was able partially to remove the cloth,

which enabled him to see the perpetrator's entire face. The victim testified that he immediately recognized the petitioner because he knew him personally, having seen him on previous occasions when the petitioner came to his apartment looking for Johnson. The victim stated that he told the responding police officers that Johnson had set him up and that the petitioner was his assailant. There also was evidence that when a police detective showed the victim a photographic array, he selected the petitioner's photograph as depicting his attacker. In addition, a police detective testified that the petitioner had telephoned him alleging that the victim's jealousy over the petitioner's relationship with Johnson had motivated the victim to frame him. The petitioner's father testified that the petitioner was home with him the entire day of the incident. It also was revealed that the victim had two prior felony convictions.

In his petition for a new trial, the petitioner alleged that Williams contacted the petitioner's trial attorney on January 4, 2001, and stated that "she had just become aware that the petitioner had been convicted of the charges relating to the burglary, robbery and assault of [the victim]." Attached to the petition was Williams' sworn affidavit in which she stated that she had spoken with the victim on December 10, 2000, the day after the incident, at Saint Francis Hospital and Medical Center, where he told her that he did not know who had assaulted him. In the affidavit, Williams also stated that she later heard that the victim was accusing the petitioner of robbing him and that she knew the victim had a grudge against the petitioner because of the petitioner's relationship with Johnson.

At the evidentiary hearing on the petition for a new trial, Williams testified extensively regarding her relationship with the victim and her discussions with the victim concerning his identification of the assailant. Williams testified as follows. The victim was her former

husband, but they remained friends and resided in the same building. When she went to visit the victim in the hospital on the day after the incident, the victim told her that Johnson "set [him] up" and that he could not see his assailant's face because "the person had like a stocking mask on his face." A few months later, she learned that the victim had accused the petitioner of attacking him, but she did not contact the police. In late December, 2001, approximately one year after the incident, the victim called her and asked her to come to his apartment in order to read a letter he had received from the petitioner. After reading the letter, in which the petitioner protested his innocence and accused the victim of fabricating his testimony, Williams asked the victim, "You're sure that this boy did this?" According to Williams, the victim first responded, "Yes," but then "start[ed] to go around in circles" and said, "Whether he did it or not, I don't care." After this discussion, Williams contacted the petitioner's trial counsel. In addition, she testified that the victim had described Johnson as his girlfriend prior to the incident, but also had referred to the petitioner as Johnson's boyfriend.

In its memorandum of decision, the court applied the "fourth prong" of *Asherman* v. *State*, supra, 202 Conn. 434, and denied the petition for a new trial on the ground that the newly discovered evidence offered in support of the petition was *not* likely to produce a different result on retrial. In making its decision, the court stated that it had reviewed the evidence offered in support of the petition in conjunction with the evidence presented at the original trial. The court stated that it had two opportunities—the hearing on the motion for a new trial and the hearing on the petition for a new trial— to observe and to consider the credibility of Williams. It made the threshold determination that Williams' testimony was credible. The court concluded, however, that although it found Williams to be credible, "the nature

of her testimony—whereby she engaged [the victim] in conversation on two occasions after the fact, although apparently to be offered to impeach the credibility of [the victim], is not of such a nature whereby this court could reasonably conclude that the newly discovered testimony probably would, if heard by the jury, result in a different verdict. [The victim's] credibility was challenged at trial by the testimony of the [emergency medical technician], the introduction of his criminal felony record and the alibi presented by the [petitioner's] father, and [it] withstood that challenge." The court further stated that although "it is possible that the proffered testimony would result in a different verdict . . . [it could not] find that the nature of the proffer is such that it is probable that its admission would result in a different verdict."[5]

The petitioner claims that the court's denial of the petition for a new trial was improper because it is probable that Williams' testimony would have resulted in a different verdict in a new trial. The petitioner contends that the testimony regarding the victim's statements would have undermined the credibility of the victim's identification, which was a critical issue at trial, because no physical evidence connected him to the crime and because the victim was the sole eyewitness. The petitioner further argues that the other evidence did not challenge adequately the victim's credibility. The peti-

---

[5] The petitioner filed a motion for articulation of the court's denial of the petition for new trial, which the court subsequently denied. In his motion for articulation, the petitioner requested that the court (1) address the first three prongs of the *Asherman* analysis and (2) specify whether it considered Williams' testimony from the hearing on the *motion* for a new trial in its decision on the petition for a new trial. In denying the motion for articulation the court stated: "The court is of the opinion that the record is complete, relevant to the ruling of the court. In the event the Appellate Court decides this court erred in its ruling, the matter can simply be remanded to the trial court for further findings." We granted the motion for review subsequently filed by the petitioner, but denied the relief requested therein.

tioner also contends that Williams' testimony regarding the animosity and jealousy the victim felt toward the petitioner due to his relationship with Johnson would have corroborated his key defense—that the victim was motivated to fabricate an identification.[6]

The court reviewed the evidence offered in support of the petition for a new trial in conjunction with the evidence presented at the trial. Despite its threshold determination that the newly discovered evidence was credible, the court concluded that it was not likely that the newly discovered evidence would produce a different result in a new trial. We are not persuaded that the court's decision was an abuse of its discretion.

We conclude that the issue presented by the petitioner is not debatable among jurists of reason, that a court could not properly resolve the issue in a different manner and that it is not adequate to deserve encouragement to proceed further. Accordingly, the court did not abuse its discretion by denying certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

---

[6] The petitioner contends that Williams provided additional testimony at the hearing on the motion for a new trial that supported the theory that the victim had fabricated his identification of the petitioner out of jealousy. The petitioner argues that the court should have considered the motion testimony along with the petition. We disagree. Although the court stated that its threshold determination of Williams' credibility was based on its observations of her during the hearings on both the motion and on the petition, it made no mention of the testimony offered during the hearing on the motion. The petitioner concedes that the transcript from the hearing on the motion was not introduced into evidence at the hearing on the petition for a new trial. We conclude that it would not have been proper for the court to consider substantive evidence not offered in support of the petition for a new trial when it determined whether newly discovered evidence would be likely to produce a different result in a new trial. See *Asherman* v. *State*, supra, 202 Conn. 434.