CARLTON MARTIN *v.* WALTER D. FLANAGAN ET AL.
(AC 28402)

Harper, Beach and Borden, Js.

Argued February 13—officially released May 6, 2008

*H. Owen Chace*, special public defender, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (named respondent).

*Opinion*

BEACH, J. The petitioner, Carlton Martin, appeals from the judgment of the trial court denying his petition for a new trial, which was based on allegedly newly discovered evidence. On appeal, the petitioner claims

that the court improperly granted the motion in limine of the respondent state's attorney[1] to preclude certain out-of-court statements from the hearing on his petition.[2] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. After a jury trial, the petitioner was convicted of felony murder, robbery in the first degree and five counts of tampering with a witness. This court affirmed his conviction on appeal. See *State* v. *Martin*, 77 Conn. App. 778, 825 A.2d 835, cert. denied, 266 Conn. 906, 832 A.2d 73 (2003). In that case, this court set forth the following facts concerning the underlying events. In January, 1999, at the petitioner's request, Nicole Harris drove to Danbury and picked up the petitioner and his cousin, Tommie

[1] The respondents are Walter D. Flanagan, the former state's attorney for the judicial district of Danbury, and the secretary of the state, who adopted Flanagan's answer to the petition for a new trial. We refer in this opinion to Flanagan as the respondent.

[2] Apparently, the court's granting of the respondent's motion in limine eliminated all or most of the petitioner's evidence. The petitioner stated at oral argument before this court that the only evidence that he wanted to introduce at the hearing on his petition for a new trial was precluded by the court's granting of the respondent's motion. After the court granted the respondent's motion in limine, the petitioner asked for the court's ruling on the petition for a new trial, and the court subsequently denied it.

The petitioner also claims on appeal that the court improperly denied his petition for a new trial. Because we conclude that the statements properly were precluded, we cannot say that the court abused its discretion in denying the petition. See, e.g., *Daniels* v. *State*, 88 Conn. App. 572, 577, 870 A.2d 1109 ("The standard that governs the granting of a petition for a new trial based on newly discovered evidence is well established. The petitioner must demonstrate, by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new trial; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new trial. . . . It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the petitioner has established substantial grounds for a new trial, and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." [Internal quotation marks omitted.]), cert. denied, 274 Conn. 902, 876 A.2d 11 (2005).

L. Martin. Id., 781. Harris then drove the petitioner and Martin to a gasoline station located next to Gallo's Hi-Way Package Store in Danbury. Id. The petitioner and Martin subsequently entered the store, fatally shot Robert Gallo, took money from the cash register and took two bottles of brandy. Id. The petitioner subsequently told Harris that he and Martin were involved in the robbery and shooting. Id.

Two days later, the petitioner called Harris and told her to come to his apartment to pick up something. Id. When she arrived, the petitioner handed Harris a shoebox containing a .25 caliber handgun wrapped in a towel. Id., 782. In March, 1999, Harris turned the gun over to the police, and ballistics tests confirmed that it had been used to fire the bullets that killed Gallo. Id.

Prior to a hearing on the petition for a new trial, the Danbury police department obtained and executed a search warrant for the residence shared by the petitioner and Martin. Id. The police seized a sawed-off shotgun, a box of .25 caliber ammunition, a .22 caliber firearm and a magazine for a .22 caliber firearm. Id. Subsequent laboratory analysis of the bullets recovered from the victim's body and those in a box of .25 caliber cartridges found at the petitioner's apartment revealed their chemical elements to be indistinguishable. Id. They all had come from that box of ammunition. Id.

Pursuant to General Statutes § 52-270 and Practice Book § 42-55, the petitioner instituted the present action by filing a petition for a new trial dated March 29, 2001, in which he requested a new trial on the basis of newly discovered evidence. Specifically, he alleged that while incarcerated, Terrell Stanton had made statements to a third party exculpating the petitioner and incriminating himself.

Prior to a hearing on his petition for a new trial, the petitioner deposed former prison inmate Douglas

Mayne. Mayne testified that he had been incarcerated with Stanton in the same dormitory facility for two to four months. He testified that prior to their incarceration together, he "knew of" Stanton but did not "hang out" with him. According to Mayne's testimony, Stanton specifically told him that he had hidden under a house in Danbury a .25 caliber revolver, which Stanton stated was the handgun that was used in the Gallo murder. Mayne testified that Stanton told him, "[i]f they find that gun, I'm going to jail for life." Mayne also testified that in reference to the Gallo murder, Stanton stated: "I did it . . . ." Mayne testified on cross-examination that although he made it appear to Stanton that he could be trusted, they were not friends. Mayne further testified on cross-examination that prisoners are known to exaggerate their crimes to gain respect in prison.

On August 8, 2005, the respondent filed a motion in limine to preclude the petitioner from admitting that portion of Mayne's testimony recounting what Stanton allegedly had said to him. After reviewing Mayne's deposition, the court granted the respondent's motion in limine. It reasoned that Stanton's statements did not satisfy the trustworthiness component necessary for the admission of statements against penal interest under § 8-6 (4) of the Connecticut Code of Evidence. The court thereafter denied the petition for a new trial and granted certification to appeal to this court.

On appeal, the petitioner claims that the court improperly granted the respondent's motion in limine. More specifically, the petitioner claims that the precluded portion of Mayne's testimony was admissible as a statement against penal interest and thus fell under an exception to the hearsay rule pursuant to § 8-6 (4). We disagree.

"[I]n order to admit a third party statement against penal interest, the trial court must determine first, that

the declarant is unavailable.[3] Second, the trial court must find that the declarant's out-of-court statement was trustworthy by considering the following factors in the context of the totality of the circumstances: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; and (3) the extent to which the declaration is against the declarant's penal interest." *State* v. *Lopez*, 254 Conn. 309, 316, 757 A.2d 542 (2000); see also Conn. Code Evid. § 8-6 (4). "No single factor in the test for determining trustworthiness is necessarily conclusive . . . the factors are reflective of the fact that there can be no precise formulation of the proof which would constitute sufficient evidence of the trustworthiness of such declarations." (Internal quotation marks omitted.) *State* v. *L'Minggio*, 71 Conn. App. 656, 666, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). "[T]he determination whether a third party declaration against penal interest is trustworthy lies in the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 155, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

A review of the factors considered by the court when weighing the trustworthiness of Stanton's statements leads us to conclude that the court did not abuse its discretion in precluding the statements. First, the court properly considered the time of the declaration and the party to whom the declaration was made. Mayne testified that he and Stanton had no relationship prior to being incarcerated together for two to four months in the same dormitory facility. Statements made by a declarant to fellow inmates have been considered untrustworthy. See *State* v. *DeFreitas*, 179 Conn. 431, 453, 426 A.2d 799 (1980) (declarations against penal

---

[3] We note that at the hearing on the respondent's motion in limine, both parties stipulated that Stanton was unavailable.

interest untrustworthy when, inter alia, confessions made to fellow inmate); *Morant* v. *State*, 68 Conn. App. 137, 172, 802 A.2d 93 (exclusion of third party confession proper when, inter alia, declarant confided not in close friends but in fellow inmate), cert. denied, 260 Conn. 914, 796 A.2d 558, overruled in part on other grounds by *Shabazz* v. *State*, 259 Conn. 811, 830 n.13, 792 A.2d 797 (2002). The fact that the statements allegedly made by Stanton were made to a fellow inmate, with whom Stanton did not have a close relationship, weighs against their trustworthiness.

The timing of Stanton's statements further detracts from their reliability. "In general, declarations made soon after the crime suggest more reliability than those made after a lapse of time where a declarant has a more ample opportunity for reflection and contrivance. . . . [See *State* v. *Pierre*, 277 Conn. 42, 70–72, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006)] (statements made within couple of weeks of homicide trustworthy); see also [*State* v. *Rivera*, 268 Conn. 351, 370, 844 A.2d 191 (2004)] (statements made within five months trustworthy)." (Internal quotation marks omitted.) *State* v. *Camacho*, 282 Conn. 328, 361, 924 A.2d 99, cert. denied, 552 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). The court found that Stanton's statements occurred approximately twenty-two months after the murder, well into or after the petitioner's trial. This significant lapse of time suggests a lack of reliability.

We next examine whether there is corroborating evidence in the case. "The corroboration requirement . . . is significant and goes beyond minimal corroboration." *State* v. *Rosado*, 218 Conn. 239, 249, 588 A.2d 1066 (1991). "Third party statements exculpating an accused are [especially] suspect . . . ." (Internal quotation marks omitted.) *Morant* v. *State*, supra, 68 Conn. App. 171. Stanton's out-of-court statements, in which he

allegedly asserted that he had murdered Gallo, exculpate the petitioner.

Our examination of the record reveals that the court properly found that Stanton's statements were not only not significantly corroborated by other evidence but were significantly contradicted. According to Mayne's testimony, Stanton relayed to him few details concerning the murder other than to confess that he "did it . . . ." Mayne testified that Stanton identified the murder weapon as a "small caliber" revolver and stated that it was hidden under a house in Danbury. This is in contradiction to the uncontroverted evidence at trial, which was that the murder weapon was a .25 caliber semiautomatic Titan handgun that Harris had turned over to the police as evidence approximately three months after the murder. *State* v. *Martin*, supra, 77 Conn. App. 806–14. Later ballistics tests confirmed that it had been used to fire the bullets that killed Gallo. Id., 782. Subsequent laboratory analysis of the box of .25 caliber cartridges found at the petitioner's apartment revealed that the bullets recovered from the victim's body had come from that box of ammunition. Id. The murder weapon was admitted as an exhibit in the petitioner's trial. Consequently, the second consideration also counsels strongly against the admission of Stanton's statements.

Although Stanton's statement that he "did it" is against his penal interest, the first two factors support the court's determination that Stanton's statements were untrustworthy. "No single factor in the test for determining trustworthiness is necessarily conclusive . . . the factors are reflective of the fact that there can be no precise formulation of the proof which would constitute sufficient evidence of the trustworthiness of such declarations." (Internal quotation marks omitted.) *State* v. *L'Minggio*, supra, 71 Conn. App. 666. Accordingly, we conclude that the court did not abuse its

discretion in granting the respondent's motion in limine to preclude Stanton's statements against penal interest on the ground that they were untrustworthy. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for a new trial.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

